J-S48015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MOHAMED MOUSTA MITWALLY | |
| Appellant | No. 1489 WDA 2015 |

Appeal from the Judgment of Sentence August 6, 2015
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0013228-2014

BEFORE:  BOWES, DUBOW AND MUSMANNO, JJ.

MEMORANDUM BY BOWES, J:                                  **FILED AUGUST 25, 2016**

Mohamed Mousta Mitwally appeals from the judgment of sentence of one year probation that was imposed after he was convicted of harassment graded as a third-degree misdemeanor.  We affirm.

The victim testified to the following facts.  On June 16, 2014, she stopped at a GetGo convenience store in Monroeville, Pennsylvania while en route to a nearby restaurant to retrieve desserts that she had ordered.  As she was leaving the store and walking to her car, Appellant approached her and initiated a conversation.  The victim was acquainted with Appellant through her boyfriend, Mohamed Ewida.  After a brief exchange, Appellant invited the victim to his home, about one-block away, so that she could

reminisce with his wife Judy, who was also an acquaintance of the victim. She agreed and followed Appellant in her car to his home.

Once she arrived inside Appellant's residence, it was evident that Judy was not home. Appellant advised the victim that Judy would be returning shortly, asked her to wait, and offered her a beer, of which he had large quantities sitting on the floor in front of the television. She declined and retreated toward the closed front door. When the victim glanced back toward the interior of the home, she observed that Appellant had lowered his pants, exposed his penis, and begun to masturbate. Appellant uttered several sexual passes at her. He stated, "You don't know how beautiful you are and how hot you are"; "Mohamed is very lucky to have someone like [you] because you are so hot"; "we might as well do it now." N.T., 8/6/15, at 20. The victim was able to open the front door but her immediate exit was slowed by the screen door which Appellant had apparently locked from the inside. As she attempted to disengage the lock, Appellant approached her, grabbed her by the arm, and continued to make passes. The victim reported, "He was saying he hadn't had sex in a very long time, and he was saying crazy talk, and it kept getting crazier by the minute." *Id*. Meanwhile, she pleaded, "please, please, just unlock the door." *Id*. at 21.

When the victim finally escaped the residence, Appellant followed her to her automobile and while she sat inside the car he pled, "Please don't tell Mohamed because [he] will kill me." *Id*. at 22. She drove away, retrieved

the desserts, and returned to her home, where she told Mr. Ewida about the ordeal.

Mr. Ewida testified that the victim was "crying hysterically" when she recounted the incident to him. *Id*. at 61. He immediately went to confront Appellant. On the way, he called the police and reported the victim's description of the event. Then, he established contact with Appellant and confirmed that Appellant had made the statements and performed the lewd acts that the victim had reported. Appellant responded, "I'm sorry, man . . . I guess I did, and you can F*** my wife." *Id*. at 65.

Appellant was arrested and charged with indecent exposure, unlawful restraint, and harassment. During the ensuing non-jury trial, Appellant challenged the victim's credibility based upon the facts that, between June 16, 2014 and April 27, 2015, she submitted to investigators three inconsistent and progressively more menacing accounts of the incident and filed a claim with Pennsylvania's Victims' Compensation Assistance Program ("VCAP"). Appellant also focused on the fact that Mr. Ewida's written statement to police was an approximate word-for-word reiteration of the victim's final version of the ordeal. At the close of trial, the trial court convicted Appellant of harassment graded as a third-degree misdemeanor[1]

_____

[1] The Pennsylvania Crimes Code defines the pertinent offense as follows:

*(Footnote Continued Next Page)*

and acquitted him of indecent assault and unlawful restraint. The trial court immediately imposed one year of reporting probation and transferred supervision to Brevard County, Florida, where Appellant had moved. Appellant filed separate post-sentence motions styled respectively as a Motion for Judgment of Acquittal and a Motion to Reconsider Sentence. This timely appeal followed the trial court's denial of post-sentence relief.[2] Appellant filed a timely Rule 1925(b) statement, following an extension of time, and the trial court issued its Rule 1925(a) opinion.

*(Footnote Continued)* ————————————————

> (a) Offense defined.--A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person
>
> . . . .
>
> (4) communicates to or about such other person any lewd, lascivious, threatening or obscene words, language, drawings or caricatures[.]

18 Pa.C.S. § 9709(a)(4).

[2] The orders denying post-sentence relief were not entered on the docket or included in the certified record. Appellant attached copies of the two unsigned orders that had been hand-dated August 26, 2015, to his notice of appeal, but neither document bears the stamp indicating the date and time they were entered by the trial court. However, since neither the trial court nor either party disputes the authenticity of the putative orders or the date that the orders were purportedly entered, we treat the orders as having been entered by the trial court on the indicated date. Thus, Appellant's September 25, 2015, notice of appeal is timely. **See** Pa.R.A.P. 905 (a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").

- 4 -

Appellant presents the following question for our review: "Was the verdict rendered contrary to the weight of the evidence where, when viewed in its entirety, the evidence was not consistent with harassment?" Appellant's brief at 4.

Pursuant to Pa.R.Crim.P. 607, in order to preserve a challenge to the weight of the evidence on appeal, the claim must be raised with the trial judge, "(1) orally, on the record, at any time before sentencing; (2) by written motion at any time before sentencing; or (3) in a post-sentence motion." Instantly, Appellant did not assert that the verdict was against the weight of the evidence during sentencing or present a specific challenge to the weight of the evidence in either of his two post-sentence motions. Thus, it is arguably waived. However, Appellant's motion for acquittal, which by definition challenges the sufficiency of the evidence, *see Commonwealth v. Hutchinson*, 947 A.2d 800 (Pa.Super. 2008), leveled allegations relating to inconsistencies in the victim's testimony and the lack of corroborating evidence. *See* Motion for Acquittal, 8/14/15, at 2. While the trial court denied the motion summarily, in rejecting the merits of Appellant's weight of the evidence claim in the Rule 1925(a) opinion, the trial court concluded that the assertions raised in the motion for acquittal complied with Rule 607. *See* Trial Court Opinion, 2/4/16, at 2 ("Defendant filed a Post Sentence Motion challenging the weight of the evidence[.]"). As the trial court deemed the issue preserved and provided the required expression of

rationale for refusing to award Appellant a new trial, we address the merits of the argument that Appellant presents on appeal.

When we review a weight-of-the-evidence challenge, we do not examine the underlying question but the trial court's exercise of discretion in resolving the claim. *Commonwealth v. Leatherby*, 116 A.3d 73 (Pa.Super. 2015). This standard applies even though Appellant was convicted at a bench trial. *See e.g.*, *J.J. DeLuca Co., Inc. v. Toll Naval Assocs.*, 56 A.3d 402, 410 (Pa.Super. 2012) (citation omitted) ("We will respect a trial court's findings with regard to the credibility and weight of the evidence unless the appellant can show that the court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence."). Stated plainly, "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Leatherby*, *supra*. at 82. A new trial is warranted in this context only when the verdict is "so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014).

Instantly, Appellant contends that the evidence against him was "tenuous, inconsistent, and unreliable . . . [and that] [a] verdict [of] guilty beyond all reasonable doubt under the specific circumstances of this case

should have shocked the [trial] court's sense of justice." Appellant's brief at 13-14. His argument relies upon the variances within, and circumstances surrounding, the victim's three factual accounts of the incident. Specifically, Appellant asserts that the trial court erred in neglecting to scrutinize the victim's testimony for "accuracy and outside corroboration" in light of what he characterized as "several drastically different versions of what occurred" during the encounter. *Id*. at 14. For the following reasons, no relief is due.

The ensuing facts are relevant to our determination. On the night of the incident, Monroeville Police Officer Daniel Lazzaro took the victim's statement and filed a report. As it relates to the issue herein, that report (1) indicated that Appellant lowered his shorts during the encounter but left on his underwear; (2) noted that the victim did not allege that she sustained a physical injury; and (3) quoted the victim as stating that Appellant made lewd comments and propositioned her for sex.

On June 30, 2014, approximately two weeks later, the victim submitted a written statement to Officer Lazzaro that indicated that Appellant had, in fact, opened his underwear during the episode to expose his genitals. That statement neither mentioned any physical injury nor augmented the quotes Appellant allegedly made while propositioning her. However, on April 27, 2015, ten and one-half months after the incident, the victim submitted an amended written statement that, for the first time, (1) asserted that Appellant began to masturbate during the encounter; (2)

alleged a physical injury to her arm; and (3) attributed the additional statement to Appellant wherein he used a vulgar reference to her genitalia and pledged, "Sooner or later[,] I will get [you]." N.T., 8/6/15, at 51.

Appellant couples the foregoing inconsistencies with the added confusion regarding the significance of the interior lock on the screen door, the intervening VCAP claim that referenced a physical injury three months before the victim noted it in her revised April 2015 statement, and the fact that, during the September 3, 2014 preliminary hearing, the victim testified that Appellant did not threaten her or attempt to prevent her from leaving.[3] He also highlights that Mr. Ewida's statement is nearly identical to the victim's even though Mr. Ewida was not present when the incident occurred. In sum, Appellant contends that, to convict him on the victim's inconsistent and uncorroborated factual account was tantamount to a denial of justice. We disagree.

The certified record demonstrates that the trial court acknowledged the deficiencies with the victim's credibility based upon the multiple descriptions of the incident and the circumstances surrounding her revised

_____

[3] The victim attributes some of the inconsistencies to the facts that she attempted to summarize the incident for Officer Lazzaro as briefly as possible, felt rushed during the preliminary hearing, and filed the April 2015 statement to provide more details based on the advice of the District Attorney's office. Similarly, the victim indicated that the mental health counselor that she began treatment with after the ordeal recommended that she submit a compensation claim to VCAP.

accounts. For example, in acquitting Appellant of indecent assault, the trial court observed that "the inconsistencies in the testimony with regard to . . . the issue of whether or not the defendant actually exposed himself to her, and the inconsistencies and the timing of those statements leads the Court to believe that there is not proof beyond a reasonable doubt[.]" N.T., 8/6/15, at 102-103. Likewise, the trial court discounted the victim's assertions regarding the locked screen door and the risk of serious body injury as required under the elements of unlawful restraint. *Id*. at 103. Thus, it is evident from the certified record that the trial court not only weighed the inconsistencies among the victim's three versions of the event in assessing her credibility, but the court also found that those inconsistencies prevented it from convicting Appellant of two offenses.

Nevertheless, the trial court did not believe that the noted variations rendered the victim's testimony wholly incredible. In rejecting Appellant's weight of the evidence claim, the trial court observed,

> The defendant's proffered reasons for why this verdict was against the weight of evidence are all based on his disagreement with this Court's credibility determinations. He contends that the victim was not credible and offers several reasons why. . . . In this case, this Court found the victim's testimony credible to the extent that i[t] established the defendant's guilt of the crime of harassment. The Court considered the factors identified by the defendant in his concise statement as they affected her credibility. The Court concluded, however, that the victim's description of events was sufficiently credible to establish the defendant's guilt of the crime o[f] [h]arassment beyond a reasonable doubt. Accordingly, the claim that the verdict as to

that count was against the weight of the evidence is without merit and the judgment of sentence should be affirmed.

Trial Court Opinion, 2/14/16, at 4-5.

The trial court's exercise of discretion is unassailable. It is beyond peradventure that the fact finder is free to believe all **part** or none of the evidence. **See e.g., Commonwealth v. Blackham**, 909 A.2d 315, 320 (Pa.Super. 2006) ("The weight of the evidence is exclusively for the finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses[.]"). Stated plainly, even acknowledging the deficiencies in the victim's account, the non-jury verdict is not so contrary to the evidence so as to shock one's sense of justice. Indeed, the variations among, and the circumstances surrounding, the supplemental statements do not bear upon whether Appellant committed harassment pursuant to § 2709(a)(4), *i.e.*, communicated lewd, lascivious or obscene words or language, which the trial court found to be supported by credible testimony. As reported in the victim's initial account to Officer Lazzaro, Appellant lured her to his home under pretext of visiting his wife, lowered his trousers, and, while standing in his underwear, declared his carnal desire for her. Thus, even ignoring all of the victim's subsequent embellishments, the record establishes that Appellant is guilty of harassment. Thus, the trial court did not abuse its discretion in refusing to award a new trial based upon the inconsistencies among the victim's three factual narratives.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2016