J-S04003-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| BRANDON PALMER, | |
| Appellant | No. 1577 WDA 2014 |

Appeal from the Judgment of Sentence April 10, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0016923-2012

BEFORE:  BOWES, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                **FILED FEBRUARY 26, 2016**

Brandon Palmer appeals from the judgment of sentence of life imprisonment that the trial court imposed after it found Appellant guilty at a nonjury trial of first-degree murder and carrying an unlicensed firearm.  We affirm.

The offenses in question arose from the shooting death of Larry Wheat on August 10, 2010, in the Hill District area of Pittsburgh.  At approximately 8:00 p.m. on the date in question, Pittsburgh Police Officer Brian Schmitt was on routine patrol in Elmore Square, a public housing complex, when a number of people began to scream that someone had been shot in the courtyard.  When Officer Schmitt arrived at the courtyard, he observed Mr.

---

* Retired Senior Judge assigned to the Superior Court.

Wheat lying face down and unresponsive. He had died from multiple gunshots to the torso.

There were two eyewitnesses to the events, Ronald Burton and Denise Hayden. Mr. Burton had known the victim for over fifteen years and Appellant for over ten years. Mr. Burton reported at trial that he never had any disputes with Appellant until the day before the shooting, August 9, 2010, when Appellant had fired six or seven shots at Mr. Burton. The shots missed Mr. Burton, who did not notify police but who noticed that Appellant's hair was in small braids or plats.

On the night of the shooting, Mr. Burton was outside the apartments of Elmore Square talking with the victim when Mr. Burton decided to go to buy cigarettes. As he was leaving Mr. Wheat, who was talking on the telephone, Mr. Burton saw Appellant walking in the victim's direction. Mr. Burton then heard two shots, turned around, and saw the victim with his hands in the air while Appellant was holding a gun. Mr. Wheat fell to the ground and attempted to crawl away but Appellant fired about five more shots into his body. Appellant then fled.

Mr. Burton said that Appellant was wearing a mask that covered his mouth, nose, and cheeks, but Mr. Burton was positive that Appellant was the shooter for various reasons. Appellant was wearing the same all-black clothing that he had worn the previous day and had the same distinctive hairstyle. Mr. Burton also knew Appellant was the perpetrator since Mr.

Burton was familiar with Appellant's build, body structure, mannerisms, and how he walked and ran.

On August 14, 2010, Pittsburgh Homicide Detective James McGee showed Mr. Burton a photographic array containing Appellant's picture. Mr. Burton identified Appellant as the shooter and wrote down on that photograph that he saw Appellant shoot Mr. Wheat.

Ms. Hayden lived in Elmore Square and had known Appellant and the victim for many years. She said that the victim's street name was Bump Bump. She was walking outside in the housing complex on the night of the shooting when she observed Mr. Wheat speaking on his telephone and Appellant run past her with his arm raised holding a gun. Ms. Hayden said that Appellant was not wearing a mask and that he was dressed in black with his hair in plats. The victim started to run while Appellant fired three shots at him. After the victim went around a wall, Ms. Hayden heard four more shots. Appellant fled and entered a black Cadillac, which drove away. Ms. Hayden initially refused to cooperate with police, but was later interviewed by them. Police showed her a photographic array containing Appellant's picture. She identified Appellant as Mr. Wheat's shooter and wrote on Appellant's photograph, "This is who I saw shoot Bump Bump." N.T, 1/10/14, at 435.

Based on this proof, the trial court, sitting as factfinder, adjudicated Appellant guilty of first-degree murder and a firearms offense. This appeal

followed denial of Appellant's post-sentence motion claiming that the verdict was against the weight of the evidence. Appellant raises these questions for our review:

> 1. Did the trial court err when it permitted the Commonwealth to present evidence, in its case in chief, of the fact that Appellant Palmer had, purportedly, fired a gunshot at one of the two key prosecution witness (a man named Ronald Burton) on the day before the decedent was shot and killed?

> 2. Did the trial court err when it denied Appellant Palmer's authorized *nunc pro tunc* post-sentence motion seeking a new trial (this being a case that hinged upon the testimony of two putative identification witnesses the first of whom claimed that he could, from a distance of between 60 and 120 feet, identify Appellant as being the masked man who shot the decedent to death, and the second of whom claimed that she, with-out the eyeglasses she needed to be able to see a large photographic image projected onto a courtroom display screen, saw Appellant, unmasked, brandishing a firearm and running towards the sight of the shooting moments before shots were fired)?

Appellant's brief at 6.

Appellant's first issue concerns the fact that Mr. Burton was permitted to testify that Appellant had shot at him the day before Appellant killed Mr. Wheat. Appellant claims that the evidence in question constituted inadmissible prior bad acts evidence. Appellant's brief at 28. We first note that, "admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion." ***Commonwealth v. Poplawski***, No. 654 CAP, 2015 WL 9485200, at \*13 (Pa. Dec. 29, 2015).

Pa.R.E. 404(b)(1) states, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(2). Accordingly, "It is settled law in this Commonwealth that other bad acts evidence is inadmissible to prove a defendant's propensity to commit crime." **Commonwealth v. Kinard**, 95 A.3d 279, 284 (Pa.Super. 2014). However, "bad acts evidence may be introduced for other limited purposes, including, but not limited to, establishing motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, common scheme or design, *modus operandi,* and the natural history of the case." **Id**.; **see** Pa.R.E. 404(b)(2) (evidence of prior bad acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident"). In criminal actions, prior bad acts are admissible "only if the probative value of the evidence outweighs its potential for unfair prejudice." **Kinard**, **supra** at 284; Pa.R.E. 404(b)(2).

In this case, the trial court ruled that the evidence in question, which was that Appellant shot at Mr. Burton the day prior to this shooting wearing the same clothing and the identical, distinct hairstyle, was permissible since it related to Appellant's identity as Mr. Wheat's shooter. There is no apparent abuse of discretion in this ruling. Moreover, the trial court sat as factfinder in this matter. It was aware that the evidence in question could

not be used as proof that Appellant had a propensity to commit crimes and could be used solely to establish Appellant's identity as the perpetrator of the crime committed on August 10, 2012.

We note that, even if inadmissible evidence has been produced at trial and should have been excluded, a new trial is not necessarily warranted if the proof was adduced at a nonjury trial. **Commonwealth v. Dent**, 837 A.2d 571, 582 (Pa.Super. 2003). This rule of law is premised upon the precept that, "trial judges sitting as factfinders in criminal cases are presumed to ignore prejudicial evidence in reaching a verdict." **Id**. Essentially, the judge is considered to be aware of pertinent evidentiary law and how to apply it. **Id**. In this case, the trial court knew of the limited purpose for which this prior crimes evidence could be used, and its admission does not constitute grounds for a new trial. **Id**.; **see also Commonwealth v. Smith**, 97 A.3d 782, 788 (Pa.Super. 2014) ("a trial court, acting as the finder of fact, is presumed to know the law, ignore prejudicial statements, and disregard inadmissible evidence").

Appellant's second and final complaint is that the verdict was against the weight of the evidence in that the two eyewitnesses were not credible and contradicted each other. When we review a weight-of-the-evidence challenge, we do not actually examine the underlying question; instead, we examine the trial court's exercise of discretion in resolving the challenge. **Commonwealth v. Leatherby**, 116 A.3d 73 (Pa.Super. 2015). This type

of review is necessitated by the fact that the trial judge heard and saw the evidence presented. *Id*. Simply put, "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id*. at 82. A new trial is warranted in this context only when the verdict is "so contrary to the evidence that it shocks one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014).

Herein, the trial court, sitting as factfinder, specifically found "that Ronald Burton and Denise Hayden were credible witnesses" and noted that this credibility determination was "supported by the evidence of record." Trial Court Opinion, 3/18/15, at 29. It considered Appellant's present challenges, which relate to inconsistencies in their testimony and prior statements to police, to be inconsequential. *Id*.

It is well-established that "The finder of fact . . . exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence. *Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011); *see also Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa.Super. 2013) ("A determination of credibility lies solely within the province of the factfinder."); *Commonwealth v. Blackham*, 909 A.2d 315, 320 (Pa.Super. 2006) ("The weight of the evidence is exclusively for the

finder of fact, which is free to believe all, part, or none of the evidence, and to assess the credibility of the witnesses. . . . It is not for this Court to overturn the credibility determinations of the fact-finder."). Our Supreme Court has further articulated, on numerous occasions, that: "Issues of witness credibility include questions of inconsistent testimony[.]" ***E.g. Sanchez***, ***supra*** at 39. Accordingly, we conclude that the trial court did not abuse its discretion in rejecting Appellant's challenge to the weight of the evidence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/26/2016