J-S63038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| SHELTON A. THOMAS | |
| Appellant | No. 2445 EDA 2015 |

Appeal from the Judgment of Sentence June 22, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0002707-2014

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN, J., and FITZGERALD,[*] J.

MEMORANDUM BY FITZGERALD, J.:          **FILED DECEMBER 30, 2016**

Appellant, Shelton A. Thomas, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas.[1] Appellant challenges the discretionary aspects of his sentence. We affirm.

The trial court summarized the facts of this case as follows:

---

[*] Former Justice specially assigned to the Superior Court.

[1] On September 9, 2015, this Court issued a rule to show cause as to why this appeal should not be quashed as untimely filed based upon the Court of Common Pleas of Philadelphia County Docket, which indicated that post-sentence motions were untimely filed on July 6, 2015, from the judgment of sentence imposed on June 22, 2015. Appellant filed a *pro se* motion for reconsideration of sentence and a motion to proceed in forma pauperis. The motion to proceed in forma pauperis was dated June 23, 2015, and attached to the motion for reconsideration of sentence, which was undated. Under the "prisoner mailbox rule," a *pro se* prisoner's document is deemed filed on the date he delivers it to prison authorities for mailing. **See generally**, **Commonwealth v. Wilson**, 911 A.2d 942, 944 n.2 (Pa. Super. 2006). Instantly, there is no indication of when Appellant delivered the document to the prison authorities. In an abundance of caution, we will not find the motion for reconsideration of sentence untimely. **See id.**

Over a period of several years, beginning June 2011, and ending some time in February or March of 2014, [Appellant] defrauded the Victim, Raymond Campbell, of his life's savings of at least $95,000. [Appellant] first approached the 93 year-old Victim as a stranger with an offer to mow the Victim's lawn. This happened several times before one occasion in which [Appellant] insisted on disposing of the lawn trimmings in a dumpster across the street from the Victim's home in West Philadelphia, instead of allowing the Victim to leave the trimmings on the curb on their designated pick-up date. . . .[2]

[Appellant] also impersonated Seth Williams, the Philadelphia District Attorney, over 100 times as a part of his scheme to deceive the Victim into paying fabricated legal fees stemming from the ostensible dumping. He repeatedly called the Victim and identified himself as Mr. Williams. At sentencing, Mr. Williams confirmed that he had never called the Victim.

Trial Ct. Op., 9/30/15, at 1-2 (citations to the record omitted).

On February 12, 2015, Appellant entered a non-negotiated guilty plea

to criminal trespass,[3] theft by deception,[4] theft by extortion,[5] identity theft,[6]

---

[2] The trial court stated that Appellant "subsequently told the Victim that both of them were facing criminal charges for improperly disposing of the trimmings." Trial Ct. Op., 9/30/15, at 1, citing N.T. Sentencing Hr'g, 6/22/15, at 12-13. A review of the record reveals that Victim testified that Appellant was charged "with putting stuff in the dumpster." *Id.* at 12.

[3] 18 Pa.C.S. § 3503(a)(1)(ii).

[4] 18 Pa.C.S. § 3922(a)(1).

[5] 18 Pa.C.S. § 3923(a)(1).

[6] 18 Pa.C.S. § 4120(a).

and impersonating a public servant.[7] Sentencing was deferred for a presentence investigation mental health report. *See* Docket at 7.

Victim testified at the sentencing hearing:

> [The Commonwealth]: And I am going to ask you to tell His Honor very briefly the impact that this crime has had on you, not just financially, but how it's affected you in every way.
>
> \* \* \*
>
> [Victim]: Well, Your Honor, [Appellant], when he came to me and wanted to cut my lawn, that's how this whole thing started. Anyways, he kept coming back to me time and time again early, in the morning, saying that he needed this money for court fees. It was always at least $600 or more. And he always said he had to be in court at an early time. So I would have to get up maybe around 5:30 in the morning to get in town and get to the ATM and get the money.
>
> But before that, I had to go to my portfolio and sell shares to obtain this money. And after that was exhausted, then I had to go to my credit cards and get cash and I exhausted that. So, like I said, this money that I had in my portfolio, my intention was to leave that to my immediate relatives. So that—that's all gone, now. And I can't leave them anything. So—
>
> The [c]ourt: How much was the total amount that you exhausted?
>
> [Victim]: It was in access [sic] of $95,000.
>
> \* \* \*
>
> The [c]ourt: So he cut your grass and then he'd say, "I need $600 to go to court."

---

[7] 18 Pa.C.S. § 4912.

- 3 -

[Victim]: No, no.

    That's not how this all started. He—one time he cut the grass and I told him, "Leave the bag and I'll put it at the curb on my pickup date." He said, "No, don't worry. I'll take care of it." He takes this bag of leaves and grass and goes across the street and puts it in a dumpster and he was—so he told me he was caught on camera putting this bag in the dumpster and he was picked up and taken to—I think the dumpster was from Montgomery County, some firm there. And they charged him with putting stuff in the dumpster. That's how this all started.

                    *    *    *

[The Commonwealth]: [T]his occurred over approximately how long a period of time?

A: Well, it first started in June of 2011.

Q: And when did it stop?

A: I think it was around maybe February or March of 2014.

N.T. Sentencing Hr'g at 8-9, 11-12, 14. Victim testified that he received calls from someone purporting to be District Attorney Seth Williams. *Id.* at 16.

    The Commonwealth asked Seth Williams to give his "impact in this case involving [Appellant] as it relates to you, specifically, the charge of impersonating a public servant." *Id.* at 19. Mr. Williams testified:

    The Witness: Your Honor, I grew up in Cobbs Creek. I grew up on Cobbs Creek Parkway just a few blocks down from [Victim] and my father worked at the Cobbs Creek Recreation Center from 1972 until he retired in 1985. I knew [Appellant] almost that entire time. And his brother—

    The Court: You knew [Appellant]?

- 4 -

The Witness: Yes.

[ ]:[8] So we used to play ping-pong, basketball. I used to see him all of the time. My father showed movies on Monday nights. My father was very kind to [Appellant] and his brother and his whole family. And so at some point I received a telephone call from the Major Crimes Unit of the Philly Police Department, Detective Moreno Nix and she asked me if I knew [Victim].

The Witness: And I said, no, Your Honor; I did not know him. And she let me know that it was a person that I knew when I played basketball for the Cobbs Creek Commons and where my father ran the Recreation Center, had been impersonating me, calling [Victim] over 100 times claiming to be me, and that as a result of work that [Appellant] had done for him, he owed fines. And he kept calling him to get money and that [Victim]—and it broke my heart because, what, he was a World War II veteran. He served in the European Theatre and the South Pacific, he was in his 90's and had given over $95,000 to [Appellant].

The Court: He's a World War II veteran?

The Witness: Yes, sir.

And he worked for the government. He's not a rich man. He just saved his money. . . . I never made a telephone call to this gentleman and so [the detective] then set up a surveillance and it was during one of those that [Appellant] came and they arrested him at the home of [Victim].

*Id.* at 19-21.

The court stated that Appellant "wrecked [Victim's] life. You know, it's okay if you want to wreck your own life, but don't go around wrecking the

_____

[8] We note that the transcript misidentifies the court as the speaker.

- 5 -

lives of other people." ***Id.*** at 40. The court opined: "[i]n the society that we have, we must look out for our seniors." ***Id***. The court noted that this was not Appellant's "first experience with the law. Your background indicates that you have had previous experience and run-ins with the law." ***Id.*** at 41. The Court explained that it "will be going outside of the guidelines because of the crime that was committed, because of the victim of the crime, . . . to protect the public, to punish, and to rehabilitate." ***Id.*** at 48.

Appellant was sentenced to consecutive terms of five to ten years' imprisonment for criminal trespass, three-and-a-half to seven years' imprisonment for theft by deception, three-and-a-half to seven years' imprisonment for theft by extortion, three-and-a-half to seven years' imprisonment for identity theft, and one to two years' imprisonment for impersonating a public servant. Following a hearing, Appellant's motion for reconsideration of sentence was denied. This timely appeal followed. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and the trial court filed a responsive opinion.

Appellant raises the following issue for our review: "Whether the trial court abused its discretion when it sentenced Appellant to an aggregate sentence of $16\frac{1}{2}$ to 33 years[*] incarceration?" [9] Appellant's Brief at 4. In his Pa.R.A.P. 2119(f) statement, Appellant claims

_____

[9] "Where a defendant pleads guilty without any agreement as to sentence, the defendant retains the right to petition this Court for allowance of appeal

1. The trial court abused its discretion when it sentenced Appellant to an aggregate sentence of $16^1/_2$ to 33 years[*] incarceration, which did not follow the dictates of 42 Pa.C.S. § 9721(b) that requires the court to at least consider the particular circumstances of the offense and the character of the defendant.

\* \* \*

In imposing such a harsh sentence, the court based it [sic] sentence on the age of the victim, the length of the deception, which squarely focuses on the serious nature of the crime without taking into account the other section 9721(b) factors.

\* \* \*

[T]his sentencing court failed to take adequate consideration of [Appellant's[10]] background, non-violent nature, remorse, and whether [he[11]] could be rehabilitated. While [Appellant's] crime cannot be trivialized, the sentence imposed in [sic] unreasonable and excessively, [sic] and should be vacated.

*Id.* at 6-7.

This Court has stated,

discretionary aspects of [an appellant's] sentence [ ] are not appealable as of right. Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by satisfying a four-part test.

We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal,

---

with respect to the discretionary aspects of sentencing." ***Commonwealth v. Brown***, 982 A.2d 1017, 1019 (Pa. Super. 2009) (citation omitted).

[10] We note that Appellant mistakenly refers to himself as "Mr. Cobb" Appellant's Brief at 6.

[11] Again, Appellant refers to himself as "Mr. Cobb." ***Id.*** at 7.

> *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Commonwealth v. Leatherby***, 116 A.3d 73, 83 (Pa. Super. 2015) (some citations omitted).

Instantly, Appellant timely filed his appeal, preserved the issue of an excessive sentence in his post-sentence motion for reconsideration of sentence, and included a statement in his brief that conforms with Pa.R.A.P. 2119(f). **See** Appellant's Brief at 6-7. Accordingly, we ascertain whether Appellant has raised a substantial question. **See Leatherby**, 116 A.3d at 83.

"We conduct a case-by-case analysis to determine what allegations constitute a substantial question." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1252 (Pa. Super. 2006) (citation omitted); **see also** 42 Pa.C.S. § 9781(b). "[A]n averment that the court sentenced based solely on the seriousness of the offense and failed to consider all relevant factors raises a substantial question." ***Commonwealth v. Bricker***, 41 A.3d 872, 875 (Pa. Super. 2012) (citation omitted).

We find that Appellant's Rule 2119(f) statement presents a substantial question. **See id.**

Our standard of review is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

More specifically, 42 Pa.C.S.A. § 9721(b) offers the following guidance to the trial court's sentencing determination:

> [T]he sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.

42 Pa.C.S.A. § 9721(b).

Furthermore,

> Section 9781(c) specifically defines three instances in which the appellate courts should vacate a sentence and remand: (1) the sentencing court applied the guidelines erroneously; (2) the sentence falls within the guidelines, but is "clearly unreasonable" based on the circumstances of the case; and (3) the sentence falls outside of the guidelines and is "unreasonable." 42 Pa.C.S. § 9781(c). Under 42 Pa.C.S. § 9781(d), the appellate courts must review the record and consider the nature and circumstances of the offense, the sentencing court's observations of the defendant, the findings that formed the basis of the sentence, and the sentencing guidelines. The weighing of factors under 42 Pa.C.S. § 9721(b) is exclusively for the sentencing court, and an appellate court could not substitute its own weighing of those factors. The primary consideration, therefore, is whether the court imposed an individualized sentence, and whether the sentence was nonetheless unreasonable

for sentences falling outside the guidelines, or clearly unreasonable for sentences falling within the guidelines, pursuant to 42 Pa.C.S. § 9781(c).

*Bricker*, 41 A.3d at 875-76 (some citations omitted).

Our Supreme Court has stated:

We emphatically reject, therefore, interpretations of our law in this area which call for separate, written opinions embodying exegetical thought. Where pre-sentence reports exist, we shall continue to presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. **Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed.** This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988) (emphasis added).

The instant trial court opined:

Criminal Trespass is a felony of the second degree and is punishable by up to ten (10) years[,] imprisonment. Theft by deception is a felony of the third degree and is punishable by up to seven (7) years[,] imprisonment. Theft by Extortion is a felony of the third degree and is punishable by up to seven (7) years[,] imprisonment. Identity theft is a felony of the third degree and is punishable by up to seven (7) years[,] imprisonment.

Impersonating a Public Servant is misdemeanor of the second degree and is punishable by up to two (2) years imprisonment. None of the sentences imposed by this court exceed the statutory maximum sentences.

\* \* \*

This [c]ourt did, in fact, consider the guidelines in sentencing [Appellant], but deviated from them based on the "(nature of) the crime committed, because of the victim of the crime, to protect the public, and to punish and to rehabilitate [Appellant]" N.T. [sentencing Hr'g at] 48. This [c]ourt specifically stated that "the guidelines are not written to cover such incidences as those [in the instant case]." *Id.* at 47-48.

More specifically, the Standard Sentencing guidelines for the relevant section of Criminal Trespass, in light of [Appellant's] Prior Record Score of three (3) and the Offense Gravity Score (OGS) of seven (7), call for fifteen to twenty-one (15-21) months[´] imprisonment. *Id.* at 26. However, this [c]ourt chose to deviate from the guidelines and impose a sentence of five to ten (5-10) years on this charge because of . . . Victim's age, as well as the scale and prolonged nature of the crime. *Id.* at 48. The charges of theft by Deception and Theft by Extortion both carry an OGS of seven (7), which would ordinarily place the Sentencing Guidelines between fifteen and twenty-one (15-21) months for each offense. This [c]ourt chose to deviate from the guidelines and impose a sentence of three and a half to seven (3.5-7) years on each charge because of the added need to protect senior citizens from this type of predation, as well as the scale and prolonged nature of the thefts. *Id.* at 48. Identity Theft under this subsection carries an OGS of five (5), resulting in a guideline sentence of six to sixteen (6-16) months[´] imprisonment. This [c]ourt chose to deviate from the guidelines and impose a sentence of three and one half to seven (3.5-7) years because the identity stolen belonged to the District Attorney of Philadelphia and the guise was used over a hundred times to manipulate a lifelong government employee and veteran. *Id.* at 20-21, 48. Impersonating a Public Servant carries a OGS of 2, which would typically recommend a sentence of probation to nine

(9) months[*] imprisonment under the Guidelines. However, this [c]ourt chose to deviate from the guidelines and impose a sentence of one to two (1-2) years[*] imprisonment because of the hundred-plus incidents and the elderly victim of the deception. *Id.* at 20, 48.

Trial Ct. Op. at 4-6 (some citations omitted).

The record belies Appellant's argument that the trial court focused solely on the serious nature of the crime without taking into consideration other factors. The court considered the Section 9721(b) factors. *See Bricker*, 41 A.3d at 875-76. Furthermore, the court considered the presentence investigation report. *See Devers*, 546 A.2d at 18. Accordingly, after examining the record as a whole, we discern no abuse of discretion. *See Bricker*, 41 A.3d at 875-76.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/30/2016

- 12 -