J-S16010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KENNETH G. MURPHY, JR. :
:
Appellant : No. 1656 MDA 2017
:

Appeal from the Judgment of Sentence June 7, 2017
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0001022-2016,
CP-38-CR-0002241-2015

BEFORE: BOWES, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY BOWES, J.: **FILED MAY 04, 2018**

Kenneth Murphy appeals from the judgment of a sentence of two and one-half years to ten years imprisonment at docket number CP-38-CR-2241-2015, and a consecutive five to ten years imprisonment at docket number CP-38-CR-1022-2016. The sentences were imposed following his conviction by a jury of burglary, criminal trespass, two counts of theft by unlawful taking, criminal mischief, and criminal solicitation to commit aggravated assault and simple assault. After careful review, we affirm.

The facts presented at trial are as follows. Co-conspirator Jordan Smith testified that he and Appellant planned and committed a burglary of Smith's coworkers' apartment on July 10, 2015. Since Smith worked with the intended victims, he knew their schedules. The plan was to burglarize the apartment when its occupants were not home.

_____
* Retired Senior Judge assigned to the Superior Court.

In furtherance of the plan, Smith told his employer that he had to leave for an orthodontist appointment. Instead, he left work early around 6:30 p.m. and drove from Annville, Pennsylvania to Hershey, Pennsylvania to pick up Appellant, a round trip that took approximately fifty minutes. Upon their return to Annville, the duo burglarized the apartment, stealing, *inter alia*, laptops, a phone, and a gun. They then returned to Hershey, stopping at a Walmart along the way to convert stolen change into bills. Smith returned to work after 8:00 p.m. The crime took approximately ninety to 105 minutes to complete.

After the burglary was discovered, the manager at Smith's workplace, Jesse Macknosky, suspected him, and asked him at different times if he robbed his coworkers. Smith eventually admitted the crime to Mr. Macknosky. Mr. Macknosky asked Smith to return the stolen goods, and Smith complied, turning over the stolen laptops and phone to him in a Walmart parking lot. Mr. Macknosky asked if Smith would return the stolen gun, and Smith "promised to get it back." N.T. Trial, 7/17/17, at 41.

Smith testified that he and his girlfriend, Ms. Jordan Miller, went to his sister Emily Bernard's house. Emily was also Appellant's girlfriend, and Appellant was there. Smith asked him for the stolen gun. Appellant retrieved a gun from a flowerpot, wiped it off, and told Smith to keep him out of it. When Smith attempted to return the gun to Mr. Macknosky, he was arrested.

After his arrest, Smith voluntarily gave a statement to Officer Jarret Dominicis admitting his commission of the burglary. However, he did not

implicate Appellant for fear that Appellant would hurt his daughter. When Smith's mother visited him in jail, however, he told her that Appellant had committed the robbery with him, and those conversations were recorded and played at Appellant's trial. In addition, the jury heard recorded telephone calls Smith made to his girlfriend, Ms. Miller, from prison, which implicated Appellant. After Smith was released on bail, he returned to the police station and gave Officer Dominicis a second written statement in which he detailed Appellant's role in the burglary. Smith testified that he did not receive any promises in exchange for his testimony against Appellant.

The Commonwealth also offered the testimony of Warren Mayo. Mayo and Appellant met while in the Lebanon County Jail. He stated that Appellant told him about the charges against him and solicited him multiple times, in exchange for payment, to hurt Smith and Ms. Miller to prevent them from testifying against him. Mayo testified that Appellant gave him a sheet of paper containing the names and addresses of his intended victims. Mayo identified the letters he sent to Officer Dominicis and the district attorney informing them that Appellant had solicited him to harm the witnesses against him. The Commonwealth addressed Mayo's lengthy criminal history, which included convictions for forgery, false reports, and false identification to law enforcement. Mayo testified that he received no promises in return for his testimony, and that although he had written several letters to the district attorney's office, they went unanswered. His probation officer and attorney also contacted the office, but to no avail.

Trooper Norbert Brennan testified that he was asked by the district attorney's office to commence an investigation based on the letters it received from Mayo. In connection with the investigation, he interviewed Appellant. Before he could tell Appellant why he was there, Appellant told the trooper that he knew why he was there: because "he supposedly put $200 to hurt someone." N.T. Trial, 7/17/17, at 227. During the course of the interview, Trooper Brennan asked Appellant how Mayo knew the addresses of Jordan Smith and Ms. Miller. Appellant replied that Mayo had that information because he showed Mayo the affidavit of probable cause. Trooper Brennan testified at trial that the affidavit of probable cause did not contain Smith or Ms. Miller's addresses.

At trial, Emily Bernard supplied an alibi for Appellant on the night of the burglary. She testified that, on that date, she returned home from work between 6:15-6:20 p.m., and Appellant was sitting on the couch. After briefly speaking with Appellant, Ms. Bernard showered for about forty-five minutes, and she and Appellant left together to drive to her mother's house in Jonestown to pick up her mail, which is about forty-five minutes away. Then, they went to see Shawn Light in Lickdale, but he was not home. At approximately 10:00 p.m., they went to Wendy's, and then they stopped at Turkey Hill to buy energy drinks. Ms. Bernard maintained that Appellant was with her the entire night of the burglary.

A jury convicted Appellant on all counts. The trial court imposed the aforementioned sentence on June 7, 2017. Appellant filed a timely post-

sentence motion for a new trial alleging that the jury's verdict was against the weight of the evidence. The trial court denied Appellant's motion, finding that the decision rendered by the jury did not shock the court's sense of justice. The trial court directed Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant complied, and the trial court authored its Pa.R.A.P. 1925(a) opinion.

Appellant raises two issues for our review:

I.    Whether the Trial Court erred in denying Appellant's Post Sentence Motion challenging the weight of the evidence as the verdict issued was rendered unreliable, tainted, questionable, and contrary to the weight of the evidence by Mr. Jordan Smith's testimony, where (a) co-defendant Mr. Smith was the only eyewitness to the alleged burglary; (b) Mr. Smith's testimony was the product of an admitted liar; and (c) Mr. Smith's testimony was purely self-serving and given in the hopes of receiving a favorable treatment from the Commonwealth in exchange for his helpful testimony against Defendant Murphy and, further, in the hopes of not being prosecuted for either his false statements to the police in his written statement made under penalty of perjury or for his destruction of evidence prior to his arrest?

II.   Whether the Trial Court erred in denying Appellant's Post Sentence Motion challenging the weight of the evidence as the verdict issued was rendered unreliable, tainted questionable, and contrary to the weight of the evidence by Mr. Warren Mayo's testimony, where (a) Mr. Mayo was the only eyewitness to the alleged criminal solicitation charges; (b) Mr. Mayo's testimony was the product of an admitted liar with a criminal history spanning four counties and more than three decades, consisting almost entirely of drug offenses and *crimen falsi* offenses; (c) Mr. Mayo's testimony was entirety self-serving and given in response to promises made by law enforcement and the Commonwealth that aid would be given on their part to see Mr. Mayo into a desirable treatment program in Dauphin

County, and (d) Mr. Mayo's trial testimony was replete with inconsistencies and utterly without support or proof?

Appellant's brief at 5.

Appellant's claims on appeal implicate the weight of the evidence. A weight of the evidence claim:

> concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed; for that reason the trial court ruling on a new trial motion, need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence.

*Commonwealth v. Miller*, 172 A.3d 632, 643 (Pa.Super. 2017).

Furthermore, a new trial should not be granted on weight of the evidence grounds "because of a mere conflict in testimony or because the judge on the same facts would have arrived at a different conclusion." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013). Our Supreme Court held further in *Clay*,

> Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

*Clay*, *supra* at 1055 (internal citations and quotation marks omitted).

In conducting a weight of the evidence review, "we do not actually examine the underlying question; instead, we examine the trial court's exercise in resolving the challenge . . . [because] the trial judge heard and

saw the evidence presented." **Commonwealth v. Leatherby**, 116 A.3d 73, 92 (Pa.Super. 2015). This court's abuse of discretion standard states that "discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill-will." **Clay**, **supra** at 1055, citing **Commonwealth v. Widmer**, 744 A.2d 745, 753 (Pa. 2000).

In support of his position that the verdict was against the weight of the evidence, Appellant contends that co-conspirator Jordan Smith is an "admitted liar" for submitting differing statements to the police about how the crime was committed, and for describing the crime on a timeline that did not fit squarely within the timeline alleged in his police statement. Appellant's brief at 13. Appellant labels Warren Mayo a deceitful liar and career criminal who cannot be trusted, as evidenced by his *crimen falsi* convictions. Appellant argues that both witnesses testified because they expected favorable treatment from the Commonwealth with regard to other charges they face.

The law is well-settled that the credibility of witnesses is a matter for the fact-finder, and "[t]he jury is free to believe all, part, or none of the evidence." **Commonwealth v. Houser**, 18 A.3d 1128, 1136 (Pa. 2011). In rejecting Appellant's claim that the verdict was against the weight of the evidence, the trial court noted that the jury heard about Smith's involvement in the burglary, his pending sentence, and his testimony that the

Commonwealth had not offered him anything in return for his testimony. Trial Court Opinion (Post-Sentence Motions), 10/4/17, at 7. Nonetheless, the jury credited Smith's account, as was its prerogative. Similarly, Mayo's criminal history and his relationship with Appellant in prison were placed before the jury. Mayo testified that he hoped he would be rewarded for testifying. *Id*. at 7. Mayo's testimony was also corroborated in part by Michael Lee Ott, Captain of Security at the Lebanon County Correctional Facility. He confirmed that Appellant and Mayo were housed in the same medium security block of that facility from October 23, 2015 to December 25, 2015. The jury found Mayo's testimony persuasive.

The court concluded, "the jury was able to weigh all the information that Defendant mentioned in his Post-Sentence Motion before rendering their verdict, and there is nothing to suggest that the jury ignored any relevant testimony and/or information in reaching their verdict." *Id*. Moreover, based on the evidence presented, the trial court found that "the verdict did not shock its sense of justice." *Id*. at 8.

We find no abuse of discretion on the part of the trial court.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>5/4/2018</u>