J-S70014-14

2015 PA Super 90

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| LAFONCE LEATHERBY | |
| Appellant | No. 510 EDA 2014 |

Appeal from the Judgment of Sentence March 8, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0002263-2011,
CP-51-CR-0003522-2011, CP-51-CR-0003524-2011

BEFORE:  LAZARUS, J., MUNDY, J., and STRASSBURGER, J.[*]

OPINION BY LAZARUS, J.:                    **FILED APRIL 21, 2015**

Lafonce Leatherby appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County, after a jury found him guilty of three counts each of unlawful contact with a minor[1], endangering the welfare of a child[2] and corruption of the morals of a minor[3], as well as two counts of indecent assault.[4]  These charges stemmed from Leatherby's

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 6318(a)(1).

[2] 18 Pa.C.S. § 4304(a).

[3] 18 Pa.C.S. § 6301(a)(1).

[4] 18 Pa.C.S. § 3126(a)(7).

sexual abuse, over the course of several years, of his wife's three young daughters, aged 9 to 14. Upon careful review, we affirm in part and vacate in part.

The lower court recounted the procedural history of the case as follows:

> Leatherby was arrested on December 8, 2010, and charged with unlawful contact with a minor, endangering the welfare of children, indecent assault on a person less than thirteen (13) years of age, corruption of minors, simple assault, recklessly endangering another person ("REAP"), and aggravated assault. The aggravated assault charge was disposed of in the Municipal Court.
>
> On October 4, 2012, Leatherby's oral motion to preclude the Commonwealth from introducing complainant's handwritten letter was heard, and subsequently denied. This case then proceeded to trial by jury on the charges of unlawful contact with a minor, endangering the welfare of children, indecent assault of a person less than thirteen (13) years of age, and corruption of minors. The charges of simple assault and REAP were nolle prossed.
>
> On October 11, 2012, the jury convicted Leatherby of every charge except that of Indecent Assault with regard to M.S., on which he was found not guilty. Sentencing was deferred to March 5, 2013, pending a Pre-Sentence Investigation Report ("PSI") and both mental health and Megan's Law evaluations.
>
> This [c]ourt bifurcated the sentencing hearing on March 5 and March 8, 2013, whereupon this [c]ourt made a finding that Leatherby was a Sexually Violent Predator ("SVP"), requiring Megan's Law mandated life-long registration. This [c]ourt sentenced Leatherby to an aggregate of seven and one half (7½) to fifteen (15) years of incarceration.
>
> On March 15, 2013, Leatherby filed a pro-se Post-Sentence Motion for Reconsideration of Sentence.

On May 9, 2013, Attorney Jonathan Sobel entered his appearance on Leatherby's behalf.

On June 4, 2013, this Court ordered that the deadline for Leatherby to file Post-Sentence Motions was July 31, 2013.

On July 31, 2013, Leatherby filed a Motion for Extension of Time, which was granted on August 2, 2013.

On September 30, 2013, Leatherby filed a Post-Sentence Motion for Reconsideration of Sentence, alleging that the verdicts were against the sufficiency and weight of the evidence, that the sentence was excessive, and that the sentences for indecent assault and corruption of minors should have merged.

On January 17, 2014, Leatherby's motion was denied.

Leatherby filed a notice of appeal with this Court on February 12, 2014, followed by a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed its Rule 1925(a) opinion on March 13, 2014.

Trial Court Opinion, 3/13/14, at 2-3.

On appeal, Leatherby raises the following issues for our review:

1. Defendant challenges the jury verdict of guilty on the charges of unlawful contact with a minor with respect to all three complainants, M.S., F.G., and F.G. based upon the lack of sufficiency of the evidence.

2. Defendant challenges the jury verdict of guilty on the charge of endangering the welfare of a child (EWOC) with respect to all three complainants, M.S., F.G., and F.G. based upon the lack of sufficiency of the evidence.

3. Defendant challenges the jury verdict of guilty on the charge of indecent assault with respect to two complainants, S.G. and F.G. based upon the lack of sufficiency of the evidence.

4. Defendant challenges the jury verdict of guilty on the charge of corruption of the morals of a minor (CMOM) with respect to all three complainants, M.S., F.G., and F.G. based upon the lack of sufficiency of the evidence.

5. Defendant challenges the jury verdict on all charges tried in this case, including unlawful contact with a minor, endangering the welfare of a child, indecent assault, and corruption of the morals of a minor based upon the weight of the evidence as to all three complainants, M.S., F.G., and F.G.

6. The trial court abused its discretion by imposing such an excessive sentence upon [d]efendant, Lafonce Leatherby. The defendant is challenging the discretionary aspect of his sentencing.

7. The trial court erred by failing to merge the conviction(s) for indecent assault with respect to complainants, S.G. and F.G. with the convictions for corruption of minors, because the convictions were based on the same acts.

8. The trial court erred in classifying defendant, Lafonce Leatherby as a sexually violent predator pursuant to 42 Pa. C.S.A. § 9792.

Brief of Appellant, at 9-10.

Prior to addressing Leatherby's appellate claims, we must consider the Commonwealth's assertion that Leatherby's appeal should be dismissed because it was not timely filed. *See* Brief of Appellee, at 11-13. In order to perfect a timely appeal, a defendant must file a notice of appeal within 30 days of the imposition of his sentence, unless he files a timely post-sentence motion within 10 days of sentencing, thereby tolling that 30-day window. *See* Pa.R.A.P. § 903; Pa.R.Crim.P. § 720(a).

Here, Leatherby was sentenced on March 8, 2014. At the time of sentencing, Leatherby's counsel stated that Leatherby could no longer afford his services, and requested that the trial court appoint new counsel. N.T. Sentencing, 3/8/14, at 69-70. The transcript of that hearing reflects that

- 4 -

Leatherby's then-counsel, Pierre LaTour, III, Esquire, agreed to file a post-sentence motion on Leatherby's behalf within ten days of sentencing. The record states,

> MR. LATOUR: At this time, Mr. Leatherby, do you want myself or your court appointed attorney to file the ten-day motion to ask this judge to reconsider your sentence?
>
> THE DEFENDANT: Yes.
>
> Q: And in addition to that, you are also requesting that the court-appointed attorney and I will perfect this appeal, file the notice of appeal with the Superior Court.
>
> A: Yes.
>
> Q: Just so [we] are clear. Judge, with that on the record, again, **what I will do is perfect his post-sentencing appeal before Your Honor and file that motion in Mr. Leatherby's name**. But again, I would ask the court-appointed attorney to handle that matter.

*Id.* at 70-71 (emphasis added).

Contrary to his promise at sentencing, Attorney LaTour never filed a notice of appeal nor a post-sentence motion to toll the 30-day appeal period, within the first ten days after the sentencing. Furthermore, the court did not appoint new counsel until March 18, 2014, exactly 10 days from the imposition of the sentence. In the interim, on March 15, 2014, Leatherby filed a *pro se* post-sentence motion in order to protect his rights. The Commonwealth contends that this *pro se* motion should be considered a nullity because Leatherby was represented by counsel at the time of filing, and such a filing would constitute improper hybrid representation. ***See***

*Commonwealth v. Ali*, 10 A.3d 282, 293 (*pro se* filing by a represented defendant constitutes "legal nullity").

Conversely, Leatherby contends that for the ten days following his sentencing, he was unrepresented and, accordingly, he was required to preserve his own rights. **See** Reply Brief of Appellant, at 2-3. We are persuaded by his argument. It is clear from the sentencing transcripts that there was, at a minimum, confusion as to who would file post-sentence motions on Leatherby's behalf and, indeed, trial counsel failed to file those motions as promised. For its part, the trial court did not appoint new counsel for Leatherby in time to preserve his post-sentence rights. Under the particular circumstances of this case, in which Leatherby was effectively abandoned by counsel **and** the trial court failed to timely appoint new counsel, Leatherby's *pro se* filing does not offend considerations of hybrid representation.[5] Leatherby should not be precluded from appellate review based on what was, in effect, an administrative breakdown on the part of the trial court. **See Commonwealth v. Robinson**, 781 A.2d 152, 158 (Pa. Super. 2001), rev'd on other grounds at 837 A.2d 1157 (Pa. 2003) (declining to quash untimely appeal where appellant was not at fault).

---

[5] Among the policy considerations behind the prohibition of hybrid representation are the desire not to overwhelm an already overburdened court system and the salutary effect of expert, focused appellate advocacy. **See Commonwealth v. Ellis**, 626 A.2d 1137, 1140 (Pa. 1993). Neither of these concerns are implicated in this case.

Accordingly, we find that the time within which to file an appeal was tolled by Leatherby's *pro se* motion, and we will consider his appeal timely.[6]

Leatherby first challenges the sufficiency of the evidence. In reviewing a challenge to the sufficiency of the evidence, we must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. ***Commonwealth v. Randall***, 758 A.2d 669, 674 (Pa. Super. 2000).

Leatherby first challenges the sufficiency of the evidence to convict him of unlawful contact with a minor. In Pennsylvania, "[a] person commits an offense if he is intentionally in contact with a minor . . . for the purpose of engaging in activity prohibited under . . . Chapter 31 (relating to sexual offenses)." 18 Pa.C.S.A. § 6318(a)(1). This Court has previously elaborated on the crime of unlawful contact, explaining, "[unlawful contact with a minor] is best understood as unlawful communication with a minor." ***Commonwealth v. Rose***, 960 A.2d 149, 152 (Pa. Super. 2008).

---

[6] To conclude otherwise would result in a miscarriage of justice. **See *Chartiers Valley Industrial & Commercial Dev. Authority v. City of Pittsburgh***, 569 A.2d 405 (Pa. Cmmw. 1990) (where breakdown in court processes interferes with post trial proceedings resulting in expiration of period for appeal, justice requires appellate review of merits so as not to unjustly penalize appellant for circumstances beyond its control).

In **Commonwealth v. Velez**, 51 A.3d 260 (Pa. Super. 2012), this Court addressed the type of communication or contact necessary to sustain a conviction for unlawful contact. There, a woman found the defendant molesting her daughter, who was "lying on the bed, nude from the waist down, with her knees up and defendant's head between her legs." **Id.** at 262. Because there was no evidence of verbal communication between the defendant and the victim, defendant argued that he did not contact the victim via a communicative message and that his physical touching of the victim, by itself, was not the type of contact contemplated by the unlawful contact statute. On review, this Court concluded that, despite the lack of evidence of overt verbal communication, it was reasonable to infer that the defendant communicated with the victim, either nonverbally or verbally, to assume the position in which she was found by her mother. **Id.**

Based on the foregoing standard and upon a review of the trial transcript, we conclude that the Commonwealth did not present sufficient evidence to support Leatherby's conviction for unlawful contact as to victim M.S. At trial, M.S. testified repeatedly that Leatherby engaged in a routine pattern of abuse, whereby he would enter her room at night, while she was sleeping, and grope her chest and buttocks.

> Q: So when you woke up are you saying that Mr. [Leatherby] already had his hand like on your breasts?
>
> A: Yes.
>
> Q: Is he saying anything?

A: He's not saying anything.

N.T. Trial, 10/4/12, at 56. Leatherby would not say anything, or communicate with her to assume any certain position, or to submit to any given act, as the Court found in *Velez*. M.S. described this pattern, testifying:

Q: Always the same type of behavior where he would come in, not say anything, kneel down near your bed, and touch your breasts and touch your butt, right?

A: Yes.

Q: Wouldn't touch anything else?

A: No.

Q: Wouldn't say anything right?

A: No.

N.T. Trial, 10/4/12, at 59. As there was no evidence presented from which the jury could have inferred that Leatherby engaged in the kind of communication, either verbal or physical, contemplated in *Velez*, we find that there was insufficient evidence to support a conviction of unlawful contact as to M.S.

With regard to S.G. and F.G., however, we find that the evidence presented by the Commonwealth was sufficient to sustain a conviction of unlawful contact. At trial, F.G. testified to the following incident:

A: When I was nine I was living with [Leatherby] and one day he asked me, well, he was in the bathroom, he told me to come here and I came. He told me to give him a hug. So I gave him

a hug and he started rubbing on me. And he started moaning and all that and he was touching me inappropriately and violating me. . . . And it was another time in the bathroom I had a skirt on, a jean skirt, and it was like a little tight. And he told me to give him a hug. He tried to pull my skirt up but it wasn't coming up. He was like how the hell you get this thing up. And I had panties on. He started rubbing on my butt and on my private areas and whatnot. He never went inside of it. He was on top of it and rubbing it. He said do that feel good. I said, no, it don't feel good. Then he started laughing.

N.T. Trial, 10/5/12, at 134. This testimony demonstrates the kind of communication contemplated by the statute. Leatherby directly engaged in communication, both verbal and physical, with F.G. for the purposes of sexual contact. As such, we find there was sufficient evidence presented to sustain a conviction of unlawful contact as to F.G.

Lastly, we also find that there was sufficient evidence to sustain the unlawful contact conviction with respect to S.G., who testified regarding the following incident:

Q: Okay. Did you ever try to use the bathroom and see him in there?

A: Yes. One night when I was going to take my shower the bathroom didn't have a door anymore because the door broke so it was just a sheet there. So I had knocked on the side of the door, well, the wall, to ask if anyone was in there. I didn't hear anybody say anything. So I assume if no one was in there so I just went in and then I saw him and I came back out and I said you didn't say you were in here. And I went downstairs and I told my mom.

Q: What made you tell your mom about that because it sounds like it was just an accident right?

A: No. I felt like he wanted me to see him.

- 10 -

Q: What did you see?

A: I just saw him there naked.

Q: Did you see his genitals at that time?

A: Yes.

N.T. Trial, 10/5/12, at 25-26.

From this testimony, the jury could infer that, by intentionally remaining silent when S.G. knocked on the door, thus causing S.G. to walk in on him while he was naked, Leatherby engaged in nonverbal communication with S.G. for the purposes of sexual contact. As such, there was sufficient evidence to support the conviction of unlawful contact with respect to S.G.

Next, Leatherby challenges his conviction for endangering the welfare of a child because he was unaware of his duty to protect the children. In Pennsylvania, "[a] parent, guardian, or other person supervising the welfare of a child under 18 years of age . . . commits an offense if he knowingly endangers the welfare of the child by violating the duty of care, protection, or support." 18 Pa.C.S.A. § 4304(a). Leatherby argues that M.S. only lived with him for approximately six months, and as such there was no clear duty of care established. Brief of Appellant, at 17-18.

The facts do not support Leatherby's contention. By the time Leatherby moved in with Martha and her daughters in 2005, he had been seeing Martha for two years, and they had conceived a son together. N.T.

Trial, 10/5/12, at 52. Accordingly, the assertion that Leatherby had no knowledge of his duty to care for or protect Martha's children is simply not plausible. Indeed, M.S. testified that, prior to the abuse, Leatherby had been the only father figure she had ever known in her life. N.T. Trial, 10/4/12, at 37. S.G. and F.G. also called Leatherby "dad". N.T. Trial, 10/5/12, at 186.

As this Court has stated, "[i]n an age when nontraditional living arrangements are commonplace, it is hard to imagine that the common sense of the community would serve to eliminate adult persons residing with a non-custodial child from the scope of a statute protecting the physical and moral welfare of children." **Commonwealth v. Brown**, 721 A.2d 1105, 1107 (Pa. Super. 1998) (applying section 4304 to unrelated individual residing with child). Accordingly, Leatherby's claim as to the sufficiency of the evidence regarding his convictions for endangering the welfare of a minor is meritless.

Leatherby next challenges his convictions for indecent assault. The crux of his claim is that the Commonwealth presented no evidence that his actions were carried out in an effort to arouse sexual desire in either of the minors. Brief of Appellant, at 23. This argument, however, misconstrues the language of the statute, which provides that "a person is guilty of indecent assault if the person has indecent contact with the complainant . . .

for the purposes of arousing sexual desire in the person *or the complainant*."
18 Pa.C.S.A. § 31269(a)(7) (emphasis added).

The evidence presented at trial demonstrates that Leatherby engaged in a regular pattern of physical and sexual abuse of three minors for his own sexual gratification. Contrary to Leatherby's claim, there is no statutory requirement that a defendant's actions have the purpose of arousing sexual desire in the victim. The plain language of the statute encompasses Leatherby's conduct and his claim therefore fails.

Leatherby also challenges his convictions for corruption of minors. His brief, however, does not address, in any way, the sufficiency of the evidence adduced against him on this charge. Instead, Leatherby argues that the trial court improperly instructed the jury on this charge and, therefore, his conviction should be overturned. As Leatherby has raised this issue in neither his Rule 1925(b) statement nor his statement of questions presented, this claim is waived. *See Commonwealth v. Lord*, 719 A.2d 306 (Pa. 1998) (issues not raised in Rule 1925 concise statement are waived).

Even if the claim were not waived, it is meritless. Pennsylvania defines the offense of corruption of minors as follows:

> Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S.A. § 6301.

This Court has expounded on the definition of the corruption of minors, holding, "[actions that] would offend the common sense of the community and the sense of decency, propriety and morality, which most people entertain," are those which shall be considered corrupting a minor. *Commonwealth v. Pankraz*, 554 A.2d 974, 977 (Pa. Super. 1989), quoting *Commonwealth v. Randall*, 133 A.2d 276 (Pa. Super. 1957). It is clear that the evidence adduced at trial, demonstrating extensive physical, sexual, and emotional abuse by Leatherby, is sufficient to sustain his convictions for corruption of a minor.

Leatherby next challenges the weight of the evidence.

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Brown*, 23 A.3d 544, 558 (Pa. Super. 2011) (citation omitted).

Here, the trial court found that M.S., F.G., S.G., Welch, and Martha Leatherby all testified in a consistent manner, and that the jury placed more weight on their testimony than the character evidence presented by Leatherby's daughter. Upon review of the record, we agree with the trial

- 14 -

court that the jury was well within its right as the ultimate fact finder to weigh the evidence in such a manner. Therefore, we can discern no abuse of discretion on the part of the trial court in concluding that the verdict was not against the weight of the evidence.

Next, Leatherby asserts that he received an excessive sentence, and that the lower court failed to articulate the reasons for fashioning the sentence in that manner. Brief of Appellant, at 31. This claim implicates the discretionary aspects of Leatherby's sentence, which are not appealable as of right. Rather, an appellant challenging the sentencing court's discretion must invoke this Court's jurisdiction by satisfying a four-part test. *Commonwealth v. Prisk*, 13 A.3d 526 (Pa. Super. 2011).

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 532, citing *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006). An appellate court will find a "substantial question" and review the decision of the trial court only where an aggrieved party can articulate clear reasons why the sentence imposed by the trial court compromises the sentencing scheme as a whole. *Commonwealth v. Tuladziecki*, 522 A.2d 17 (Pa. 1987).

Here, Leatherby has preserved his claim by filing a post-sentence motion and including it in his Rule 1925(b) statement. His notice of appeal was timely filed. Finally, Leatherby has included in his brief a statement pursuant to Pa.R.A.P. 2119(f), in which he claims that the trial court imposed an excessive sentence and failed to articulate its reasons for doing so.

Here, each of Leatherby's sentences was within or below the standard range of the sentencing guidelines. "In every case where the court imposes a sentence outside the sentencing guidelines . . . the court shall provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant." *Commonwealth v. Rodda*, 723 A.2d 212, 215 (Pa. Super. 1999); 42 Pa.C.S. § 9721(b). Thus, the trial court was not required to provide a statement of reasoning and this claim does not raise a substantial question. Nevertheless, the lower court did explain that it relied on the argument of counsel, the testimony of Leatherby and his witnesses, his family background, the presentence report and the mental health evaluation in fashioning Leatherby's sentence. *See* N.T. Sentencing, 3/8/13, at 63; *Commonwealth v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013) (denying appeal of challenge to discretionary aspect of sentencing where court relied on presentence report and imposed sentences within the guidelines). Accordingly, this claim is meritless.

Leatherby also claims that the court relied on impermissible factors in arriving at its sentence. While this claim has been found to raise a substantial question, *Commonwealth v. Daniel*, 30 A.3d 494 (Pa. Super. 2011), Leatherby fails to expand upon this claim in the argument section of his brief. Accordingly, the claim is waived.

Finally, Leatherby claims that the trial court failed to consider the requisite statutory factors prior to imposing sentence. While this claim raises a substantial question, *see Commonwealth v. Kelly*, 33 A.3d 638 (Pa. Super. 2011), it garners Leatherby no relief. Here, the trial judge was in possession of a presentence report, so we presume that she was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. *Commonwealth v. Devers*, 546 A.2d 12, 18 (Pa. 1988). "Having been fully informed by the presentence report, the sentencing court's discretion should not be disturbed." *Id.*

Next, Leatherby contends that his sentences for indecent assault and corruption of a minor should merge for purposes of sentencing, as they are based on the same criminal act. Appellant's Brief, at 36.

Section 9765 of the Sentencing Code states that "[n]o crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9765.

With respect to the crimes of indecent assault and corruption of minors, this Court has stated as follows:

> In order to be convicted of indecent assault, it must be shown that the defendant had indecent contact with the victim. 18 Pa.C.S.A. § 3126(a)(7). An individual is guilty of corruption of minors if the individual, inter alia, performs any act that corrupts or tends to corrupt the morals of any child under the age of 18. 18 Pa.C.S.A. § 6301(a)(1). A corruption of minors charge, therefore, encompasses any such act, "the consequences of which transcends any specific sex act and is separately punishable." *Commonwealth v. Hitchcock*, 523 Pa. 248, 565 A.2d 1159, 1162 (1989).

*Commonwealth v. Fisher*, 787 A.2d 992, 995 (Pa. Super. 2001). Accordingly, "by their statutory elements alone, the offense of corruption of a minor is not necessarily a lesser-included offense of indecent assault." *Id.* (punctuation omitted).

In *Commonwealth v. Robinson*, 931 A.2d 15 (Pa. Super. 2007) (en banc), this Court held that the defendant was properly sentenced for both indecent assault and corruption of minors where he had committed the separate acts of touching the victim's breasts and her vagina. Similarly, here, Leatherby fondled the breasts and then rubbed the buttocks of S.G. and F.G. Accordingly, under *Robinson*, Leatherby was properly sentenced for both crimes.

Lastly, Leatherby seeks to challenge the trial court's decision to classify him as a sexually violent predator ("SVP"). Brief of Appellant, at 37.

Questions of evidentiary sufficiency present questions of law; thus, "our standard of review is de novo and our scope of review is plenary."

***Commonwealth v. Bishop***, 936 A.2d 1136, 1141 (Pa. Super. 2007) (citations omitted).  In reviewing such a claim, we consider the evidence in the light most favorable to the Commonwealth, which prevailed upon the issue at trial.  ***Id.***

An SVP is defined as:

A person who has been convicted of a sexually violent offense set forth in Section 9795.1 (relating to registration) and who is determined to be a sexually violent predator under 9795.4 (relating to assessments) due to a mental abnormality or personality disorder that makes the person likely to engage in predatory sexually violent offenses.  In order to show that the offender suffers from a mental abnormality or personality disorder, the evidence must show that the defendant suffers from a congenital or acquired condition . . . that affects the emotional or volitional capacity of the person in a manner that predisposes that person to the commission of criminal sexual acts to a degree that makes the person a menace to the health and safety of other persons.  Moreover, there must be a showing that the defendant's conduct was predatory.  Predatory conduct is defined as an act directed at a stranger or at a person with whom a relationship has been instituted, established, maintained, or promoted, in whole or in part, in order to facilitate or support victimization.  Furthermore, in reaching a determination, we must examine the driving force behind the commission of these acts, as well as looking at the offender's propensity to re-offend, an opinion about which the Commonwealth's expert is required to opine.  However, the risk of re-offending is but one factor to be considered when making an assessment; it is not an "independent element."

At the SVP hearing, the Commonwealth has the burden of proving by clear and convincing evidence that the person meets the criteria to be designated as an SVP.  This burden of proof has been described as an intermediate test, falling below the highest level of proof, beyond a reasonable doubt, but above the preponderance of the evidence standard.  Evidence will meet this level of proof if it is so clear, direct, weighty, and convincing as to enable the [trier of fact] to come to a clear conviction, without hesitancy, of the truth of the precise facts at issue.

*Commonwealth v. Stephens*, 74 A.3d 1034, 1038-39 (Pa. Super. 2013) (citations and quotations omitted).

Leatherby's SVP hearing took place on October 11, 2014, before the Honorable Nina Wright Padilla. The court accepted the Commonwealth's witness, Dr. Barbara Ziv, as an expert in the field of assessment, treatment, and management of sexual offenders. Doctor Ziv concluded the following: (1) Leatherby suffers from paraphilia not otherwise specified, based on his abuse of his three young stepdaughters over the course of several years; (2) Leatherby suffers from a personality disorder not otherwise specified with antisocial traits, based on his extensive criminal history, use of aliases, the five protection from abuse orders filed against him, history of drug abuse, and assault convictions, as evidence of impulsivity, dishonesty, aggressiveness, irresponsibility, and lack of remorse; (3) either of those diagnoses on their own could support a finding that Leatherby is likely to reoffend; (4) Leatherby maintained or promoted a relationship with his victims, in part, for the purpose of sexual victimization.; (5) Leatherby had already demonstrated a propensity for recidivism based on his continued abuse of F.G. and S.G. after M.S. had left the house to live with her aunt. N.T. SVP Hearing, 3/5/13, at 18-21; 23-35.

Leatherby challenges these conclusions, arguing that Dr. Ziv "failed to draw any connection between [Leatherby's] criminal act and the likelihood that he will commit another sex offense." Brief of Appellant, at 43.

Essentially, Leatherby argues that because he did not have a prior history of sexual offenses, Dr. Ziv's conclusion that he is likely to commit sexual offenses in the future is wrong. We disagree.

As the trial court recognized, in reaching her conclusions, Dr. Ziv examined a wide swath of Leatherby's past and current behavior, ranging from the time he was 15 years of age up to the present. Particularly compelling is Dr. Ziv's finding that Leatherby had already demonstrated a propensity to reoffend by beginning to abuse F.G. and S.G. after M.S. removed herself from the home. Considering these facts, and the whole of Dr. Ziv's conclusions, in the light most favorable to the Commonwealth, we agree that the Commonwealth met its burden of proving by clear and convincing evidence that Leatherby meets the criteria to be classified as an SVP.

Judgment of sentence affirmed in part and vacated in part. Case remanded for resentencing in accordance with the dictates of this opinion.

Judge Strassburger joins the Opinion.

Judge Mundy files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/21/2015

- 21 -