J-S07011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERMAINE M. JACKSON | : | |
| | : | |
| Appellant | : | No. 347 EDA 2019 |

Appeal from the Judgment of Sentence Entered September 25, 2018
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0000513-2017

BEFORE: NICHOLS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.: **FILED AUGUST 03, 2020**

Appellant appeals *pro se* from the judgment of sentence[1] following his bench trial conviction for possession with intent to deliver (PWID) and related offenses. Appellant challenges his stipulated bench trial colloquy, the sufficiency of the evidence, and an evidentiary ruling by the trial court. We affirm.

On February 22, 2017, a grand jury returned an indictment against Appellant for multiple offenses based on his involvement in a large drug

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant purports to appeal from the trial court's "PCRA Order," entered on January 14, 2019. However, the appeal properly lies from the September 25, 2018 judgment of sentence, as made final by the trial court's January 14, 2019 order denying Appellant's timely filed post-sentence motions. We have amended the caption accordingly.

trafficking operation based in Chester County.[2]   On March 10, 2017, the

Commonwealth filed an information charging Appellant with one count of

PWID, fifteen counts of criminal use of a communication facility, four counts

of dealing in proceeds of unlawful activities, one count of criminal solicitation,

one count of corrupt organizations, and four counts of criminal conspiracy.[3]

*See* Criminal Information, 3/10/17.

On June 4, 2018, the trial court held a pre-trial hearing.  Appellant was

represented Attorney Matthew Miller, Esq. (trial counsel), who was privately

retained.  At the outset of the hearing, the Commonwealth informed the trial

court that the parties had agreed to proceed with a bench trial with stipulated

facts.  N.T. Hr'g, 6/4/18, at 2-3.  Specifically, the Commonwealth explained:

> What we plan to present to your Honor today, is one, [Appellant]
> would waive his right to a jury trial.  In exchange he would also
> be agreeing to stipulated facts with the Commonwealth which
> would shorten this basically into a bench trial on certain elements
> only.
>
> In exchange for [Appellant] agreeing to said separated facts, the
> Commonwealth will be withdrawing and proceeding on only a
> certain number of charges going forward,[4] which would leave your
> Honor with the stipulations at the end of the day the opportunity
> to find him guilty or not guilty on only certain counts based on the

_____

[2] Appellant was a high-ranking member of the drug organization, led by Richard Maitre.

[3] 35 P.S. § 780-113(a)(30), 18 Pa.C.S. §§ 7512(a), 5111(a)(1), 902(a), 911(b)(1), and 903, respectively.

[4] The Commonwealth indicated that, in exchange for Appellant's agreement to the stipulated facts, it would proceed to trial of two counts of PWID and one count each of criminal use of a communication facility, dealing in proceeds of unlawful activities, corrupt organizations, and criminal conspiracy.

stipulations and the evidentiary hearing going forward. All tol[d,] the crux of the issue is the controlled substance in play.

As your Honor knows, [this] is a wire case in which no controlled substances were seized from [Appellant] or from his home, *et cetera*. So it is a, for lack of a better term what's called a no dope case. There's no controlled substances involved, so it's all going to be proved through circumstantial evidence, which is what your Honor would base his opinion as to what the substance was.

*Id.* at 2-3.

Trial counsel stated:

I agree with what [the Commonwealth] has said. [Appellant] and I have discussed his rights to a trial by jury and all the intended rights. We have gone over the stipulated facts that the Commonwealth typed up and that that we have agreed to. It tracks pretty closely the documentary evidence from what we have seen on the wiretaps. [Appellant] is fully aware of what we are doing in court.

*Id.* at 3-4.

The trial court conducted on-the-record colloquies regarding Appellant's decision to waive his right to a jury trial and proceed to a bench trial on the stipulated facts. *Id.* at 4-18. First, the trial court incorporated Appellant's written jury waiver colloquy, which he signed and reviewed with trial counsel. *Id*; Written Jury Trial Waiver Colloquy, 6/4/18. Ultimately, the trial court accepted Appellant's waiver, finding that he waived his right to a jury "knowingly, intelligently, and voluntarily." *Id.* at 18.

The trial court also conducted a colloquy regarding Appellant's decision to accept the terms of the stipulations. Appellant stated that he, along with trial counsel, had reviewed and signed the five-page document setting forth

- 3 -

the stipulated facts. *Id.* at 19-20. Appellant acknowledged that he was waiving his right to cross-examine witnesses on the facts covered by the stipulation. *Id.* at 21-22. Appellant also confirmed that, by agreeing to the stipulated facts, the Commonwealth had established a basis for finding Appellant guilty of each offense. *Id.* at 22. Appellant confirmed that the sole issue of fact to be determined by the trial court was whether Appellant possessed marijuana or methamphetamine. *Id.* at 11. At the conclusion of the colloquy, the trial court accepted the stipulation and Appellant's waiver of his rights. *Id.* at 23.

The following day, the trial court began the two-day bench trial. The Commonwealth presented Detective Joseph Nangle, a member of the drug and organized crime unit, who testified as expert on PWID offenses and "the code of language used by drug dealers in their investigations of possession with people who are drug dealers." N.T. Trial, 6/5/18, at 24, 32. Detective Nangle stated that, during the course of the investigation, his department conducted multiple controlled buys, implemented visual electronic surveillance, and obtained wiretaps. *Id.* at 46, 49. Detective Nangle stated that, based on the totality of the circumstances, it was his opinion that Appellant was dealing methamphetamine, not marijuana. *Id.* at 40-51.

The Commonwealth also presented testimony from Barry Sydenstricker and Michael Zelek, cooperating witnesses who sold methamphetamine for Maitre, who led the drug organization. N.T. Trial, 6/6/18, at 56, 99-100. Zelek testified that he purchased methamphetamine from Appellant, and that

the sale was facilitated by Maitre. *Id.* at 64-65. Sydenstricker testified that Appellant gave him a package containing a controlled substance, which he delivered to Maitre. *Id.* at 108. Sydenstricker stated that although he did not see the contents of the package, he believed it was methamphetamine. *Id.* at 108-11. Sydenstricker also testified that after he was arrested, while he was in Chester County Prison with Appellant, Appellant instructed Sydenstricker to tell investigators that he transported marijuana, not methamphetamine. *Id.* at 115-125.

On June 15, 2018,[5] the trial court found that the substance possessed and delivered by Appellant was methamphetamine. On September 25, 2018, the trial court sentenced Appellant to an aggregate term of fifteen to thirty years' incarceration.[6]

On September 28, 2018, while Appellant was still represented by trial counsel, the trial court docketed Appellant's first *pro se* filing, which was labeled as a Post Conviction Relief Act[7] (PCRA) petition. Therein, Appellant challenged the sufficiency and weight of the evidence supporting his conviction. PCRA Pet., 9/28/18, at 1-3; 9-11 (unpaginated). Appellant also

---

[5] At the conclusion of trial on June 6, 2018, the trial court stated that it needed additional time to review the exhibits before reaching a verdict. The trial court issued its decision on June 15, 2018.

[6] The sentencing transcript was not included in the certified record or the supplemental record transmitted to this Court.

[7] 42 Pa.C.S. §§ 9541-9546.

raised trial counsel's ineffectiveness, stating that he was "firing [trial counsel] and would like appointed counsel." *Id.* at 12-14.

On October 1, 2018, the trial court docketed Appellant's second *pro se* filing. Therein, Appellant indicated that he was "no longer represented by [trial counsel]" and requested that the trial court appoint new counsel "to properly amend [his] PCRA motion . . . and [ask] for a stay of [his] appeal." Am. PCRA Pet., 10/1/18, at 1 (unpaginated). Appellant also raised an additional ineffectiveness claim against trial counsel. *Id.* at 2.

On October 8, 2018, the trial court issued an order stating that it would construe Appellant's *pro se* filings as timely filed post-sentence motions.[8] Trial Ct. Order, 10/8/18 at 1-2. With respect to counsel, the trial court explained that "merely stating in a *pro se* court filing that an attorney is 'fired' is not

_____

[8] The trial court explained:

> Although entitled "*Pro Se* PCRA Motion" and "PCRA" respectively, the two issues raised by [Appellant] are those specifically to be addressed in a post-sentence motion, namely a motion for judgment of acquittal as permitted by Rule 720(B)(1)(ii), and a motion for a new trial pursuant to Rule 720(B)(1)(iv). The motions have been filed within the ten-day period allotted for the filing of post-sentence motions by Pa.R.Crim.P. Rule 720(A)(1), and [Appellant's] direct appeal period has not yet elapsed. As a result, judgment in his case is not yet "final," and any PCRA claims initiated at this stage, including the ineffective assistance of counsel argument raised by [Appellant], would be prohibitively premature. For those reasons, we interpret [Appellant's] *pro se* filings as post-sentence motions under Rule 720.

PCRA Order, 10/8/18, at 1.

sufficient to abrogate the attorney-client relationship, and [trial counsel] at present remains [Appellant's] counsel of record." *Id.* at 1-2.

On October 18, 2018, trial counsel filed a motion to withdraw, indicating that his agreement with Appellant "did not include any post-sentence motions" and requesting that the trial court allow Appellant to retain new counsel for appeal. Mot. to Withdraw, 10/18/18 at 1. The trial court took no immediate action on trial counsel's motion.

On January 14, 2019, the trial court issued an order denying Appellant's post-sentence motions. On January 28, 2019, the trial court docketed Appellant's *pro se* notice of appeal and motion for leave to proceed *in forma pauperis* (IFP). On February 4, 2019, the trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement. On February 8, 2019, the trial court docketed Appellant's motion to proceed *pro se* and request for a *Grazier*[9] hearing. On February 26, 2019, the trial court granted counsel's October 18, 2018 motion to withdraw and scheduled a *Grazier* hearing for April 29, 2019.[10]

_____

[9] *Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

[10] In a footnote to its order, the trial court explained:

> [Trial c]ounsel subsequently filed the above motion to withdraw on October 18, 2018, however the motion did not indicate that [Appellant] had been served as required by Pa.R.Crim.P. 120(B)(2)(a). Following the disposition of [Appellant's] post-sentence motions on January 14, 2019, the [trial] court instructed [trial] counsel to serve [Appellant] with a copy of the motion to withdraw. [Appellant's] February 8, 2018 motion references a January 17, 2019 letter he received from counsel notifying him of

Meanwhile, the trial court granted two extensions for Appellant to file his Rule 1925(b) statement.[11]  On March 22, 2019, the trial court docketed Appellant's timely Rule 1925(b) statement, which challenged both the weight and sufficiency of the evidence.  Appellant also indicated that he had "the right to explain and supplement" his Rule 1925(b) statement once he received the transcripts of testimony.  Appellant's Rule 1925(b) Statement, 3/22/19, at 2.

The trial court issued a Rule 1925(a) opinion stating that Appellant's issues were "substantially similar to those raised in his post-sentence motions" and directing this Court to review its January 14, 2019 order denying those motions.  Trial Ct. Op., 4/4/19, at 2.

On April 22, 2019, this Court docketed Appellant's *pro se* application to proceed IFP.  On April 26, 2019, Appellant filed an application to extend the briefing schedule and requested an order directing the trial court to provide him with transcripts.

---

the motion to withdraw after being instructed to do so by the [trial] court.  [Appellant] requests the court to permit him to proceed *pro se* in this appeal, acknowledging and consenting to [trial] counsel's withdrawal.  For that reason, both counsel's motion to withdraw and [Appellant's] motion to proceed *pro se* are granted.

Trial Ct. Order, 2/26/19, at 1-2 n.1 (some formatting altered).

[11] Appellant indicated that he had not yet received transcripts of testimony.

Thereafter, the trial court conducted a **Grazier** hearing on April 29, 2019, and issued an order granting Appellant's motion to proceed *pro se*. The trial court indicated Appellant "knowingly, voluntarily, and intelligently waived his right to counsel for the purpose of this direct appeal" and that Appellant "stated on the record that he is not requesting standby counsel." Trial Ct. Order, 4/29/19.

On May 31, 2019, we remanded the matter for the trial court to "provide Appellant, either directly or via prior counsel, with any requested notes of testimony and documents that the trial court deems necessary and relevant . . . ." Order, 5/31/19.[12] On June 18, 2019, the trial court filed a response indicating that it had provided Appellant with trial transcripts from June 5, 2018 and June 6, 2018.

On July 17, 2019, the trial court docketed Appellant's supplemental Rule 1925(b) statement. On July 29, 2019, Appellant filed a motion with this Court requesting that we extend the briefing schedule and remand the matter to the trial court for a supplemental Rule 1925(a) opinion that addressed the merits of Appellant's additional issues. On August 5, 2019, the trial court issued an

_____

[12] We dismissed Appellant's IFP petition as moot, noting that Appellant was already proceeding IFP on appeal.

order stating that the issues raised in Appellant's supplemental Rule 1925(b) statement were waived.[13]  ***See*** Trial Ct. Order, 8/1/19.

On August 27, 2019, we remanded the matter for the trial court to prepare a supplemental Rule 1925(a) opinion addressing the merits of Appellant's additional claims.  On September 9, 2019, the trial court issued a supplemental Rule 1925(a) opinion addressing Appellant's claims and finding them meritless.  Trial Ct. Supp. Op., 9/9/19, at 1-6.

On appeal, Appellant raises the following issues:

1. Did the [trial] court err in accepting pleas of guilty where the pleas were not made voluntarily nor taken in conformity with the require[ment]s of Pa.R.Crim.P. 590, particularly where no colloquy was performed, and stipulations of guilt to various charges began the proceedings?

2. Was the evidence presented insufficient to sustain the convictions predicated upon the drug methamphetamine where the evidence presented supported only an inference of marijuana?

3. Did the [trial] court err in denying cross-examination in violation of the Sixth Amendment right to confrontation and due process, where [Appellant,] who is African American, sought to raise issues of credibility due to racial bias by

_____

[13] The trial court stated that "its orders of February 4, 2019 and February 14, 2019 expressly notified [Appellant] that any issues not raised in a timely filed [Rule] 1925(b) statement would be waived." Order, 8/1/19, at 2.  Further, the trial court noted that "issues raised in a 1925(b) statement filed after the [trial] court has prepared its opinion and transmitted the record to the appellate court are waived on appeal." ***Id.***  Further, the trial court explained that "[Appellant] has demonstrated no extraordinary circumstances whatsoever in his [supplemental Rule 1925(b)] filing, and there is no basis upon which to conclude that these issues could not have been raised at the proper time." ***Id.*** at 3.

> examining a white witness on his ownership of a racist symbol, a [C]onfederate flag?

Appellant's Brief at 2 (some formatting altered).

Initially, we must first determine whether Appellant's appeal is properly before us. **See Commonwealth v. Horn**, 172 A.3d 1133, 1135 (Pa. Super. 2017) (stating that appellate courts may consider the issue of jurisdiction *sua sponte*). "Jurisdiction is vested in the Superior Court upon the filing of a timely notice of appeal." **Commonwealth v. Green**, 862 A.2d 613, 615 (Pa. Super. 2004) (*en banc*) (citation omitted).

"In order to perfect a timely appeal, a defendant must file a notice of appeal within [thirty] days of the imposition of his sentence, unless he files a timely post-sentence motion within [ten] days of sentencing, thereby tolling that [thirty]–day window." **Commonwealth v. Leatherby**, 116 A.3d 73, 78 (Pa. Super. 2015) (citations omitted). However, "[i]f no timely post-sentence motion is filed, the defendant's appeal period begins to run from the date sentence is imposed." Pa.R.Crim.P. 720, cmt.

It is well settled that hybrid representation is not permitted in this Commonwealth. **Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa. Super. 2016). A *pro se* post-sentence motion filed by a counseled defendant is considered a legal nullity. **Commonwealth v. Nischan**, 928 A.2d 349, 355 (Pa. Super. 2007).

However, this Court has recognized that where a defendant is effectively abandoned by his counsel and the trial court fails to appoint new counsel in a

- 11 -

timely manner, a counseled defendant's *pro se* filing "does not offend considerations of hybrid representation." ***Leatherby***, 116 A.3d at 79. In ***Leatherby***, the defendant instructed his private attorney to file a post-sentence motion to preserve his rights, but requested that the trial court appoint new counsel for purposes of his appeal. ***Leatherby***, 116 A.3d at 78. After the defendant's private attorney failed to file a post-sentence motion, the defendant filed a timely *pro se* post-sentence motion. ***Id.*** On appeal, this Court stated that "there was, at a minimum, confusion as to who would file post-sentence motions on [the defendant's] behalf" and "that for the ten days following his sentencing, he was unrepresented and, accordingly, he was required to preserve his own rights." ***Id.*** Ultimately, we declined to quash the appeal, holding that the defendant "should not be precluded from appellate review based on what was, in effect, an administrative breakdown on the part of the trial court." ***Id.*** at 79.

Here, Appellant was still represented by trial counsel when he filed his *pro se* post-sentence motions. In his filings, Appellant requested that the trial court appoint new counsel on his behalf. The trial court issued an order accepting Appellant's *pro se* filings as timely filed post-sentence motions, but indicating that trial counsel was still attached to the case. In response, trial counsel filed a motion to withdraw indicating that his agreement with Appellant "did not include post-sentence motions." ***See*** Mot. to Withdraw, 10/18/18. Under these circumstances, it appears that Appellant was effectively unrepresented for the ten days following his sentencing. ***See***

- 12 -

*Leatherby*, 116 A.3d at 78. Therefore, because Appellant's *pro se* filings did not offend the considerations of hybrid representation, we decline to quash his appeal on that basis. *See id.*

In his first issue, Appellant challenges what he refers to as a "*de facto* guilty plea." Appellant's Brief at 7. Appellant argues that "[d]espite the fact that the hearing was styled as a [b]ench [t]rial pursuant to Pa.R.Crim.P. 620[,] it was actually a guilty plea under Pa.R.Crim.P. 590." *Id.* In support, Appellant asserts that "[t]he proceedings of the 'bench trial' began with a series of stipulated 'facts,' which included[,] among other things, specific admissions to specific crimes, by reference to the charging statutes." *Id.* Appellant contends that because his stipulation amounted to a guilty plea, the trial court was required to conduct a guilty plea colloquy. He concludes that, because the trial court did not conduct a proper plea colloquy, his "admissions of guilt are *per se* involuntary and not knowing." *Id.* at 10.

The Commonwealth responds that the trial court conducted an extensive colloquy to ensure that Appellant knowingly and voluntarily accepted the terms of the bench trial and the stipulated facts. Commonwealth's Brief at 13. The Commonwealth also notes that Appellant "obtained a benefit from agreeing to the stipulated fact[s] because[,] in exchange for his agreement, the Commonwealth withdrew numerous other criminal charges." *Id.* at 14. Therefore, the Commonwealth contends that the trial court properly accepted Appellant's waiver of his rights. *Id.*

"It is axiomatic that parties may bind themselves by stipulations so long as they do not affect the jurisdiction of the court, and provided that the stipulations are not in contravention of peremptory statutory requirements." ***Commonwealth v. Mathis***, 463 A.2d 1167, 1171 (Pa. Super. 1983) (citation omitted and some formatting altered).

However, our Supreme Court has held that "[a] colloquy ensuring a knowing and voluntary decision is required any time a defendant stipulates to evidence that virtually assures his conviction because such a stipulation is functionally the same as a guilty plea." ***Commonwealth v. Eichinger***, 108 A.3d 821, 832 (Pa. 2014) (citation omitted); ***see also Commonwealth v. Davis***, 322 A.2d 103, 105 (Pa. 1973) (noting that although the defendant did not plead guilty, he stipulated to testimony which made the finding of guilt a "foregone conclusion").

> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

***Eichinger***, 108 A.3d at 832 (citations omitted).

Here, although the trial court did not address the merits of Appellant's claim, our review of the record confirms that it is meritless. As noted

previously, prior to trial, the trial court conducted a colloquy regarding Appellant's decision to proceed to a bench trial based on stipulated facts. **_See_** N.T. Hr'g, 6/4/18, at 4-24. Specifically, the trial court confirmed that Appellant understood (1) the maximum sentence for each offense; (2) that he was waiving the right to cross-examine witnesses covered in the stipulation; (3) that if he agreed to the stipulation, the trial court would have a factual basis to find him guilty of the charged offenses; and (4) that the only fact in dispute was whether Appellant sold methamphetamine or marijuana. **_See id._** at 4-10, 21-23. Ultimately, the trial court found that Appellant's decision was knowing, voluntary, and intelligent. **_See Eichinger_**, 108 A.3d at 832. Therefore, Appellant is not entitled to relief on this claim.

In his next issue, Appellant argues that there was insufficient evidence to support the trial court's finding that Appellant sold methamphetamine, rather than marijuana. **_Id._** at 11. First, he contends that Detective Nangle "had little to offer" as an expert witness, and that "much of what he said was circular, essentially tautologies offered as truths." **_Id._** He also asserts that Detective Nangle "was unwilling to accept the logic that Appellant was moving marijuana, because he wanted it to be meth." **_Id._** at 12.

Appellant also argues that "the lay witnesses never saw the drugs being delivered and had no actual knowledge of what they handled as a go between for Appellant." **_Id._** at 12. Appellant asserts that although Zelek testified that he purchased meth from Appellant, the price was "more consistent with the

price of marijuana." *Id.* at 13.  Further, Appellant contends that Sydenstricker "never saw the drugs that were supposedly methamphetamine." *Id.*

The Commonwealth responds that "there was sufficient circumstantial evidence to prove, beyond a reasonable doubt, that [Appellant] was a methamphetamine dealer." Commonwealth's Brief at 19.  The Commonwealth refers to testimony from Detective Nangle, Zelek, and Sydenstricker, and states that "[o]n multiple occasions, [Appellant] was identified as the person who met with buyers and users to exchange methamphetamine for the agreed upon price." *Id.* at 17.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> Because a determination of evidentiary sufficiency presents a question of law, our standard of review is *de novo* and our scope of review is plenary.  In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. [T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence.  Moreover, as an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder.

*Commonwealth v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018) (citation omitted), *appeal denied*, 204 A.3d 924 (Pa. 2019).

Here, the trial court found that although there was no direct evidence that Appellant possessed methamphetamine,

> the Commonwealth presented a litany of evidence at trial that provided circumstantial evidence that [Appellant] dealt in methamphetamine. Numerous text messages to and from [Appellant] discussed the sources, destinations, and prices of unnamed drugs that were consistent with that of methamphetamine, not marijuana. The Commonwealth presented the testimony of Michael Zelek, a methamphetamine user and dealer, who testified that he purchased that narcotic from [Appellant]. According to Zelek, that sale was facilitated by Richard Maitre, the leader of the drug trafficking organization of which [Appellant] was a high-ranking member. Barry Sydenstricker, another coconspirator in the drug trafficking organization, testified that [Appellant] gave him a pound of a controlled substance to then pass on to Maitre. Later, when he and [Appellant] were in Chester County Prison, [Appellant] approached Sydenstricker and emphasized that the substance he had provided was marijuana, not methamphetamine. Sydenstricker testified credibly that he believed that substance was actually methamphetamine, and that [Appellant] made that statement at the prison in an attempt to alleviate his own culpability, by attempting to have Sydenstricker tell law enforcement that it was marijuana and not methamphetamine.

Trial Ct. Order, 1/14/19, at 2.

Viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we agree with the trial court that there was sufficient evidence to establish that the substance possessed and sold by Appellant was methamphetamine. *Palmer*, 192 A.3d at 89. Therefore, Appellant is not entitled to relief on this claim.

In his final issue, Appellant argues that the trial court erred by precluding him from cross-examining Sydenstricker about whether he owned

a Confederate flag. Appellant's Brief at 14. By way of background to this claim, at trial, the following exchange occurred during Appellant's cross-examination of Sydenstricker:

[Trial counsel]: Do you have a [C]onfederate flag in your house?

[The Commonwealth]: Objection to relevance.

[Trial counsel]: Well, I think we have a whole bunch of folks in this case, up to 40 defendants. Most of them look one way. My client looks a different way.

[The Commonwealth]: Your Honor, I'm going to object to try to institute race into this is, I think, inappropriate at this point, Judge.

[Trial counsel]: I'm not sure race was ever a fact in the operation.

[Trial court]: Do you expect the [c]ourt to take judicial notice that someone who has a [C]onfederate flag must of necessity hold certain racial beliefs, [trial counsel], or how else do you plan to make some - go ahead

[Trial counsel]: Somebody with a [C]onfederate flag is more likely than not to hold certain beliefs.

[Trial court]: What evidence - I mean what will be the evidence in the record of that?

[Trial counsel]: Well, it depends on him.

[Trial court]: Other than your statement which is not evidence?

[Trial counsel]: No, it's not evidence but –

[Trial court]: You going to call an expert witness?

[Trial counsel]: I need an expert witness?

[Trial court]: No. I'm just asking whether you are going to call an expert witness?

[Trial counsel]: No. I'm not going to call an expert witness about a [C]onfederate flag, no.

[Trial court]: Sustained.

N.T. Trial, 6/6/18, at 138-39.

On appeal, Appellant argues that possession of a "[t]he [C]onfederate flag is a racist symbol, and the mere ownership of the same is of evidentiary value when looking for racial animus and bias in a witness." Appellant's Brief at 14. Appellant asserts that he "was entitled to cross examination on this important issue of credibility" and asserts that "[i]f the fact finder believed the witness was biased, the testimony could have been discredited and the verdict likely different." *Id.* at 14-15.

The Commonwealth responds that the trial court properly limited Appellant "from cross-examining a witness on an irrelevant and immaterial matter." Commonwealth's Brief at 19. The Commonwealth contends that Appellant failed to offer any proof for his claim that Sydenstricker owned a Confederate flag. *Id.* Further, the Commonwealth asserts that Appellant "failed at trial, as he does on appeal[,] to explain how the witness who possessed this flag had a racial motivation against him." *Id.* at 20.

The right to cross-examine witnesses, although fundamental, is not absolute. *Commonwealth v. Rosser*, 135 A.3d 1077, 1088 (Pa. Super. 2016) (*en banc*). "A trial court has discretion to determine both the scope and the permissible limits of cross-examination. The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law." *Commonwealth v. Briggs*, 12 A.3d 291, 335 (Pa. 2011) (quotation marks and citations omitted).

The Confrontation Clause of the Sixth Amendment of the United States Constitution provides a defendant with a constitutional right "to conduct cross-examination that reveals any motive that a witness may have to testify falsely." ***Commonwealth v. Bozyk***, 987 A.2d 753, 756 (Pa. Super. 2009). However, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, and prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." ***Id.*** Moreover, "[a] defendant's right of confrontation includes the right to cross-examine witnesses about possible motives to testify. However, a witness may not be contradicted on 'collateral' matters, . . . and a collateral matter is one which has no relationship to the case at trial." ***Commonwealth v. Saunders***, 946 A.2d 776, 786 (Pa. Super. 2008) (citation omitted).

Even where the trial court makes an erroneous evidentiary ruling, "[i]f a trial error does not deprive the defendant of the fundamentals of a fair trial, his conviction will not be reversed." ***Commonwealth v. Wright***, 961 A.2d 119, 135 (Pa. 2008) (citations omitted). As our Supreme Court has stated, "[a] defendant is entitled to a fair trial but not a perfect one." ***Id.***

If a trial court commits an error, we have explained that

[t]he Commonwealth bears the burden to establish that the error was harmless. The Commonwealth satisfies the harmless error burden when the Commonwealth is able to show:

(1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Green*, 162 A.3d 509, 519 (Pa. Super. 2017).

Here, the trial court concluded that Sydenstricker's alleged ownership of a Confederate flag was not relevant to the facts of Appellant's case. *See* N.T. Trial, 6/6/18, at 138-39; *see* Trial Ct. Supp. Mem. Op., 9/9/19, at 6. We disagree. Based on our review of the record, we conclude that cross-examination relating to Sydenstricker's alleged ownership of a Confederate flag was relevant for the trial judge, as factfinder, to assess whether Sydenstricker harbored improper racial bias against Appellant. *See Commonwealth v. Gentile*, 640 A.2d 1309, 1313 (Pa. Super. 1994) (reiterating that "cross-examination directed toward revealing possible bias, interest or motive of a witness in testifying against the defendant is always relevant as discrediting the witness and affecting the weight of his testimony"). However, based on the properly admitted and overwhelming evidence of Appellant's guilt, as supported by the record, we conclude that the trial court's erroneous ruling does not warrant relief as the prejudicial effect was insignificant compared to the evidence of Appellant's guilt and therefore

- 21 -

could not have contributed to the verdict.[14]  ***See Commonwealth v. Brown***, 185 A.3d 316, 330 (Pa. 2018); ***see also Wright***, 961 A.2d at 119; ***Green***, 162 A.3d at 519.   As noted previously, Zelek and Sydenstricker gave substantially similar testimony that they each delivered methamphetamine from Appellant to the leader of the drug organization.  ***See*** N.T. Trial, 6/6/18, at 64-65; 108-11.   Thus, even if the trial court allowed Appellant to cross-examine Sydenstricker about his potential bias, it would not have affected the outcome of the case.  ***See Green***, 162 A.3d at 519.  Accordingly, Appellant is not entitled to relief on this issue.

Judgment of sentence affirmed.

Judge Strassburger joins the memorandum.

Judge King did not participate in the consideration or decision of this case.

---

[14] While the Commonwealth's brief does not include a harmless error analysis, our Supreme Court has suggested that an appellate court may raise the issue of harmless error *sua sponte*.  ***See Commonwealth v. Moore***, 937 A.2d 1062 (Pa. 2007) (noting that although the Commonwealth did not include a harmless error analysis in its brief, "an appellate court may affirm a valid judgment based on any reason appearing as of record, regardless of whether it is raised by the appellee").

Notably, our Supreme Court has granted review to determine whether appellate courts may continue to address harmless error *sua sponte*.  ***See Commonwealth v. Hamlett***, 391 WAL 2017 (Pa. 2019).  Nonetheless, we remain bound by existing precedent until such time it is overturned.  ***See Commonwealth v. Reed***, 107 A.3d 137, 143 (Pa. Super. 2014).

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/3/20