J-A17043-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TIMOTHY T. GOODEN | : | |
| | : | |
| Appellant | : | No. 2213 EDA 2021 |

Appeal from the PCRA Order Entered June 3, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003686-2014

BEFORE:   PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED FEBRUARY 02, 2023**

Appellant, Timothy T. Gooden, appeals from the order dismissing his first petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541, *et. seq.*  His counsel has petitioned to withdraw pursuant to ***Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988), and ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1988) (*en banc*).  After careful review, we vacate the dismissal order and remand for further proceedings.

On direct review, we set forth the following summary of the facts in this matter:

> This case arises from the brutal robbery of Kevin Slaughter by Appellant and his four co-defendants, Christopher Cooley, Kylieff Brown, Shaheed Smith, and Kareem Cooley, after a chance meeting between Slaughter and Brown at the SugarHouse Casino.
>
> …

---

[*] Retired Senior Judge assigned to the Superior Court.

On December 8, 2013, at approximately 8:00 p.m., Slaughter ran into Brown, whom he knew from prison, at the casino. Brown told Slaughter that he wanted to purchase cocaine and a handgun, and Slaughter responded that he was able to sell both. Slaughter cashed out with $3,600.00 to $4,200.00, and left the casino alone to drop off the money at his home in Northeast Philadelphia.

Slaughter then returned to the casino to meet Brown and they drove to South Philadelphia and picked up the drugs and gun. While they were driving, Brown was on the phone, telling the person he was speaking with their exact location. When Slaughter pulled over to stop at a store, a van drove by and then quickly returned, veering out of its lane towards his vehicle. Slaughter then looked in his rear-view mirror and saw Appellant slumped down on the right side of his vehicle, creeping towards him with a gun. Slaughter attempted to flee in the car, but Appellant fired bullets at it. The car crashed into a telephone pol[e], and Slaughter exited it and started running.

Slaughter was shot in his lower back and two or three men threw him into the van and tied him up with duct tape. The van fled the scene. Police quickly responded to a 911 call of gunshots and arrested Brown and Kareem Cooley, who had remained at the scene.

As the van traveled in the direction of center city, Appellant and Christopher Cooley rode in the back with Slaughter. Appellant repeatedly asked Slaughter where his money and drugs were, and threatened to kill and burn him. Cooley pistol-whipped Slaughter numerous times, and put a gun in his face. Appellant punched Slaughter in the face several times and knocked out his front tooth. The men put a bag over his head at various points. Slaughter gave Appellant his address and the cell phone number of his wife, Samirah Savage, and told him to obtain the money he won at the casino from her. The men drove to his home.

Samirah Savage received several phone calls from a blocked phone number, which she did not answer. She then received a call from an unblocked number, which she did not answer, and heard a knock on the front door. She went to the door, and a man with a cellphone told her that her husband was on the phone. She cracked the door open, took the phone, and spoke with Slaughter. He told her that he was being followed, that the person at the door

was his friend, and to give the friend the money from the casino. When she questioned Slaughter, he told her to do what he said, or they would kill him. She gave the money and the phone to the man.

Once the conspirators had Slaughter's money, they drove behind a high school and threw him out of the van. Appellant or Cooley shot at him six times, with a bullet passing through his face and neck. A resident of the neighborhood heard gunshots, found Slaughter, and called 911. The conspirators drove the van to another location, doused it with an accelerant, and lit it on fire as a neighbor watched. Meanwhile, police responded to the scene where Slaughter was shot, and he was airlifted to the hospital. He underwent multiple surgeries and survived his injuries.

During the ensuing investigation, police obtained search warrants for the defendants' cellphone records, which showed frequent contact between them immediately before, during, and after the crime. The Federal Bureau of Investigation (FBI) was able to reconstruct the conspirators' approximate locations throughout the crime using historical cell site data.[2] Appellant's cellphone was at the approximate site of each stage of the crime.

> [2] Special Agent William B. Shute of the FBI testified that historical cell site analysis is when investigators take the information contained in a suspect's call detail records, which are generated as a result of the suspect's phone calls, and analyze the calls and depict them onto a map. (**See** N.T. Trial, 6/01/16, at 40). The phone number of the phone attributable to Appellant was (267) 670-6898. (**See id.** at 63).

Arrest warrants were issued for those defendants not immediately apprehended at the scene of the first shooting. Appellant was arrested on February 25, 2014.

**Commonwealth v. Gooden**, 2018 WL 1835552, *1-2 (Pa. Super., filed Apr. 18, 2018) (unpublished memorandum).

On June 13, 2016, a jury found Appellant guilty of attempted murder, aggravated assault, robbery, kidnapping, carrying a firearm without a license,

carrying a firearm on a public street or public property in Philadelphia, possessing an instrument of crime, and four counts of criminal conspiracy.[1] On September 9, 2016, the trial court sentenced him to an aggregate term of twenty to forty years of imprisonment, to be followed by ten years of probation.[2] The court later denied a timely-filed post-sentence motion in which Appellant challenged the weight and sufficiency of the evidence sustaining his convictions. Order, 10/25/16; Post-Sentence Motion, 9/12/16, ¶¶ 3-4. On direct review, we affirmed the judgments of sentence.[3] *Commonwealth v. Gooden*, 190 A.3d 722 (Pa. Super. 2018) (table). Our Supreme Court later denied *allocatur*. *Commonwealth v. Gooden*, 196 A.3d 207 (Pa. 2018) (table).

Appellant timely filed a *pro se* PCRA petition, asserting that his prior counsel was ineffective for not preserving claims concerning: (1) the removal of a juror; (2) the trial court's instructions to the jury; (3) the abandonment

---

[1] 18 Pa.C.S. §§ 901(a), 2702(a)(1), 3701(a)(1)(ii), 2901(a)(1), 6106(a)(1), 6108, 907(a), and 903, respectively.

[2] The individual terms included concurrent imprisonment terms of twenty to forty years for attempted murder, ten to twenty years for kidnapping, and two years and six months to five years for carrying a firearm without a license, to be followed by ten years of probation for robbery. No further penalty was imposed for the remaining offenses.

[3] On direct appeal, Appellant challenged the admission of identifying information of the names of individuals saved in cellular phone address books and alleged hearsay regarding the identity of the owner of a specific cellular phone number, and the weight and sufficiency of the evidence. *Commonwealth v. Gooden*, 2018 WL 1835552, *2-5 (Pa. Super., filed Apr. 18, 2018) (unpublished memorandum)

of a dismissal motion alleging a violation of Pa.R.Crim.P. 600 and Appellant's constitutional right to a speedy trial; (4) the failure to argue that the admission of hearsay violated Appellant's right to confrontation; (5) the admission of a "suggestive identification" without a cautionary instruction; (6) the failure to challenge the veracity of a search warrant and "the use of the phones to connect [Appellant] as the shooter;" and (7) the failure to file a suppression motion. *Pro Se* PCRA Petition, 8/7/19, §§ 6, 16. In a memorandum attached to his petition, Appellant additionally asserted that his prior counsel was ineffective for not presenting the testimony of Raheem Turner (a man who was initially identified by victim Slaughter as the shooter), not conducting an adequate pre-trial investigation, stipulating to evidence concerning drugs recovered in the case, and not moving to sever his case so he could be tried separately from his co-defendants. Memorandum of Law attached to *Pro Se* PCRA Petition, 8/7/19, ¶¶ 1, 6, 8, 11.

Present counsel was appointed and filed a ***Finley*** no-merit letter, along with a motion to withdraw as counsel. Appellant thereafter filed correspondence with the PCRA court confirming his agreement with the withdrawal motion. *Pro Se* Correspondence, 3/22/21 ("I would like to remove [PCRA counsel] off my case as my attorney [because] he [is] not for me."). The PCRA court issued a dismissal notice pursuant to Pa.R.Crim.P. 907 and, after no response was filed, dismissed the petition. Dismissal Order, 6/3/21, 1; Rule 907 Notice, 4/23/21, 1. Notably, the dismissal order was silent as to any ruling on counsel's withdrawal motion.

After no timely appeal was filed, Appellant filed *pro se* correspondence requesting the PCRA court to either reissue its dismissal order or grant *nunc pro tunc* relief because he did not receive service of the dismissal order in time to file an appeal. The PCRA court reinstated his right to appeal *nunc pro tunc* from the dismissal of his PCRA petition. Reinstatement Order, 9/17/21, 1. Appellant initiated this appeal by filing a *pro se* notice of appeal within the thirty days' leave granted by the court.[4] *Pro Se* Notice of Appeal, 10/12/21, 1; Reinstatement Order, 9/17/21, 1.

The PCRA court subsequently issued an order directing Appellant to serve it with a statement of issues complained of on appeal pursuant to Pa.R.Crim.P. 1925(b). Rule 1925 Order, 11/8/21, 1. Even though PCRA counsel remained counsel of record given the PCRA court's failure to issue an order addressing counsel's withdrawal motion, the PCRA court only sent its Rule 1925 order to Appellant, rather than to his counsel. **Id.**, attached Proof of Service (referring to appellate counsel as "*Pro se*"). Appellant filed a *pro se* response to the order, in which he asserted challenges to PCRA counsel's effectiveness pursuant to **Commonwealth v. Bradley**, 261 A.3d 381 (Pa. 2021). Rule 1925(b) Statement, 11/23/21, ¶¶ 1-4. He claimed that PCRA counsel was ineffective for not raising claims that trial counsel provided

_____

[4] We note that Appellant's *pro se* notice of appeal was purportedly taken from the PCRA court's September 17, 2021, order granting him relief in the form of reinstating his collateral appeal rights. As such, Appellant was not "aggrieved" by that order. Appellant's appeal is thus technically from the order dismissing his PCRA petition. We have corrected the caption accordingly.

- 6 -

ineffective assistance by not effectively impeaching victim/witness Kevin Slaughter and not requesting a "corrupt and polluted source" jury instruction with respect to Mr. Slaughter. *Id.* at ¶¶ 1, 3.

This Court denied another counsel withdrawal motion without prejudice to allow counsel to file either an advocate's brief or a *Turner/Finley* no-merit letter. Superior Court Order, 2/1/22, 1. Counsel filed a no-merit letter and another withdrawal motion that are presently before this Court. Here, we are unable to respond to those filings because we appreciate from our review of the procedural history of the case that a breakdown in court process has taken place.

Generally, a *pro se* filing by an appellant who is represented by counsel is considered to be a legal nullity, as the filing constitutes improper hybrid representation. *Commonwealth v. Leatherby*, 116 A.3d 73, 78 (Pa. Super. 2015); *see also Commonwealth v. Williams*, 151 A.3d 621, 623 (Pa. Super. 2016) ("[T]his Court will not accept a *pro se* motion while an appellant is represented by counsel; indeed, *pro se* motions have no legal effect and, therefore, are legal nullities."). This rule also extends to *pro se* Rule 1925(b) statements filed by counseled appellants. *Commonwealth v. Ali*, 10 A.3d 282, 293 (Pa. 2010) ("[A]ppellant was represented by counsel on appeal, so his *pro se* Rule 1925(b) statement was a legal nullity."). Because counsel remained of record in the case, following the dismissal of the PCRA petition, in the absence of an order from the PCRA court with respect to the counsel withdrawal motion, Appellant's *pro se* motion for the reinstatement of his

collateral appeal rights and his response to the PCRA court's Rule 1925 order would arguably constitute nullities.[5]

Ordinarily, the absence of a court-ordered Rule 1925(b) statement would cause a defendant to waive all his claims on appeal, and the absence of a timely-filed notice of appeal would deprive this Court of any jurisdiction. **See Commonwealth v. Nahavandian**, 954 A.2d 625, 629-30 (Pa. Super. 2008) (quashing an untimely appeal and stating that jurisdiction is vested in the Superior Court only upon the filing of a timely notice of appeal); Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived."). To reach those results in this case based on a reflexive application of the rule against hybrid representation would result in a miscarriage of justice where Appellant appeared to be acting *pro se* after the PCRA court's Rule 907 notice gave the impression that the lower court was going to accept counsel's **Finley** no-merit letter but then the court never followed through with a ruling on the counsel withdrawal motion.

_____

[5] Appellant's *pro se* notice of appeal would be treated differently from these other filings. **See Commonwealth v. Cooper**, 27 A.3d 994, 1007-08 (Pa. 2011) (premature, *pro se* notice of appeal by represented defendant should not be treated as a nullity as a result of the prohibition on hybrid representation but rather as perfected at the time the final order was entered); **Williams**, **supra**, 151 A.3d at 623-24 (*pro se* notice of appeal is treated differently than other filings that implicate hybrid representation rule and must be docketed in spite of the rule). If the filing that initiated the reinstatement of Appellant's collateral appeal rights was a nullity, however, then the order granting the reinstatement would likewise be a nullity because the PCRA court lacked any authority to consider it.

In **Leatherby**, this Court held that a defendant's *pro se* post-sentence motion, that was filed while he remained represented by counsel, was not a legal nullity where there was significant confusion and delay in appointing counsel, and an "administrative breakdown" led to the filing of an untimely appeal. 116 A.3d at 79. To rectify the breakdown in processes by the lower court in that case, this Court gave effect to Leatherby's *pro se* post-sentence motion that would have otherwise been barred as prohibitive hybrid representation. Giving effect to Appellant's *pro se* filings between the dismissal of the PCRA petition and the filing of counsel's no-merit letter on the appellate level, as in **Leatherby**, would not rectify the confusion caused by the PCRA court's failure to rule on the counsel withdrawal motion in this case because there are presently no claims properly before this Court: the *pro se* Rule 1925(b) statement only addressed new claims of PCRA counsel ineffective assistance pursuant to **Bradley** and the filing presently before us for consideration is a new no-merit letter from counsel which explicitly does not address the claims in the *pro se* Rule 1925(b) statement.[6]

Under these circumstances, we must deem the PCRA court's failure to rule on the counsel withdrawal motion a breakdown in the operation of the courts. The only appropriate remedy is that we must vacate the dismissal

---

[6] Counsel properly refrained from addressing Appellant's claims that were attempted to be raised under **Bradley** where he remained counsel of record and this Court has enforced a general rule prohibiting attorneys from challenging their own stewardship. **See Commonwealth v. Shaw**, 247 A.3d 1008, 1015 (Pa. 2021) (noting the general rule against counsel challenging their own performance).

- 9 -

order and direct the PCRA court to rule on the counsel withdrawal motion that was left outstanding. **See Leatherbury**, 116 A.3d at 79 ("[An appellant] should not be precluded from appellate review based on what was, in effect, an administrative breakdown on the part of the trial court."). Following a grant of the withdrawal motion, Appellant should be provided an opportunity to raise, either as a *pro se* litigant or with the assistance of newly-retained counsel, any PCRA counsel ineffectiveness claims, such as the ones included in his *pro se* Rule 1925(b) statement because, consistent with **Bradley**, that will be his first practical opportunity to do so following the removal of PCRA counsel. **See Bradley**, 261 A.3d at 401 ("[W]e hold that a PCRA petitioner may, after a PCRA court denies relief, and after obtaining new counsel or acting *pro se*, raise claims of PCRA counsel's ineffectiveness at the first opportunity to so, even if on appeal"). Afterwards, the PCRA court can issue a new final order, setting up a possible appeal properly before this Court in which Appellant can pursue issues concerning the PCRA court's acceptance of PCRA counsel's no-merit letter and the denial of any issues hereafter raised pursuant to **Bradley**.

We vacate the June 3, 2021, order dismissing Appellant's petition and we remand for further proceedings consistent with **Bradley** and this memorandum.

Order vacated. Appellate counsel withdrawal petition dismissed without prejudice for further consideration by the PCRA court. Case remanded. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date:* *2/2/2023*